# FELIX GUZMÁN

*v.*

# JULIÁN HERENCIA.

---

Mayaguez, Law, No. 193.

1. When the facts, though contradictory, sustain the verdict and there was no material error in the charge, a motion for a new trial will be denied.
2. A verdict of $9,000 for a double fracture of the thigh bone that resulted in shortening the leg about two inches, and other injuries, not considered excessive.

Opinion filed March 27, 1908.

---

*Messrs. Cornwell & Feliu,* for plaintiff.

Guzmán v. Herencia.

~ *Messrs. Sweet, Rossy, & Campillo,* for defendant.

RODEY, Judge, delivered the following opinion:

This cause is before us on the motion of the defendant for a new trial. It was tried in the Mayaguez district in the latter part of February, 1908, before a jury, which returned a verdict for the plaintiff in the sum of nine thousand dollars under a complaint that claimed twelve thousand dollars. The facts and circumstances surrounding the case, as well as the conduct of the trial, are fresh in the court's mind and we have no difficulty in appreciating the arguments of counsel in that behalf.

The plaintiff is a man of family, about forty-five years of age, and was formerly a musician in Cuba and earned up to $160.00 a month, but at the time in question was a bookkeeper at Mayaguez earning $30.00 to $50.00 a month and at times making as high as $75.00 a month.

On the night of November 4th last, in company with a companion, he was walking down the public sidewalk on one of the public streets in Mayaguez, when a section that projected over the sidewalk, of a heavy tiled roof of a building belonging to the defendant, broke off and fell on him, crushing and burying him in the *débris* and badly shattering and breaking his thigh bone in two places, one fracture being about two and a half inches above the knee, and the other up close to the socket at the hip. This double fracture, according to the testimony of the surgeons, rendered it impossible to keep the leg weighted and stretched, or otherwise properly adjusted or treated, as could be done in the case of a simple fracture, and hence the muscles of the leg adhered and stiffened, and the leg became

somewhat crooked and was shortened a couple of inches or more, and it is not certain that the leg even as shortened will ever be really well, owing to the nature of the fractures, or ever more than partically useful. The man when testifying appeared to be in a very much crippled condition and it looked as though he might about as well have lost the leg altogether.

Counsel making the motion for a new trial came into the cause for the first time for that purpose and hence learned the facts only from the record, the transcript and the statements of his client, and did not get the benefit of seeing plaintiff and his condition, as did the court and jury. The evidence, while conflicting in some respects, tended to show generally that the building was forty or fifty years old and that this projection of the roof over the sidewalk was about fifty feet long and four feet wide and was supported by wooden brackets and covered with very heavy old style tiles set in mortar which increased the weight. There was evidence tending to show that there had been unusually heavy rains preceding the collapse of the portion of the roof referred to. The evidence by the doctors as to the suffering of the plaintiff showed, as stated, that the fractures were very severe in character and that the plaintiff remained in bed for several months with his leg in splints or a plaster cast, and in fact it was manifest to the jury, and there was evidence to that effect, that he was not well, but was still suffering pain at the time of the trial, as he could not use his leg at all and came into court on crutches as helpless as though he had but one leg.

Counsel concedes that there was little or no serious error committed by the court at the trial, but contends that, while the court gave the law properly to the jury in its instructions, still that it did not instruct sufficiently upon all points in the

Guzmán v. Herencia.

case. In fact, his application for a new trial is confessedly more in the nature of an appeal to the discretion of the court, owing to the size of the verdict and to what he considers the insufficiency of the evidence, than it is on any exception to the court's action. We have again examined our instructions in the case and are satisfied that they are reasonably fair and presented the case properly to the jury. Counsel for defendant, when contending that if the proximate cause of the collapse of the building was a latent defect in its construction, of which the defendant had no notice, etc., called our attention to a case which was pending in this court some years since, where we instructed the jury to return a verdict for the defendant. In that case the defendant, a steamship company, was unloading poles from a ship into a lighter, several men having been employed in the lighter to receive and guide the poles as they were removed by chain and derrick from the ship. The chain broke and one of the poles, falling on the husband of the plaintiff in that case, killed him. Counsel here contends that there is a similarity between the two cases, and that this defendant should not be responsible for a defect of construction in his building, of which he was not, and could not by the exercise of reasonable care have been aware. The answer to this contention is that the evidence as to that was quite conflicting and that the jury could well have believed that ordinary care upon defendant's part would have shown the condition of his roof and its liability to fall. In the steamship company's case referred to, it was in evidence that the man in charge sent to another boat in the morning before beginning work, to get a proper chain, as the one he had was not considered strong enough, and that he repeatedly tested and thoroughly examined the one he started to use, and it did in fact carry weights much

Guzmán v. Herencia.

heavier than the one it finally broke with, and there was no defect apparent in the chain that could be seen on careful examination. The cases therefore are not parallel.

On the whole, we are constrained to hold that under all the circumstances our instructions were sufficient and properly presented the law to the jury. No exception was taken to them as given and no request for additional instructions was made. The question that leaves most room for argument is the contention that the verdict is excessive. On January 3, 1908, in the case of Munich v. Valdés, ante, 251, lately pending in this court, we denied a motion for a new trial, the principal ground for the motion being that the verdict was excessive. At that time we examined the question at some length as to what will and what will not be considered excessive verdicts, and, to say the least, we find that the courts are in hopeless confusion on the subject, but, as then stated, we find it to be the settled law that there is no definite rule to fix what must be the damages in any particular case. We also find it to be the settled law that it is no part of the duty of the court to interfere with or set aside a verdict of a jury when it cannot be said that their verdict was the result of mistake, partiality, passion, or prejudice, simply because the court might be of opinion itself that the verdict is rather too high. In the case at bar, we instructed the jury that there could be no punitive damages or smart money recovered, because there was no malice connected with the negligence of the defendant.

At the time of deciding the Munich Case, we examined a list of cases to be found cited as a footnote to the case of Standard Oil Co. v. Tierney, 14 L.R.A. 677. An extensive list is given there of cases where courts considered verdicts of juries as excessive in suits for damages for personal injuries,

Guzmán v. Herencia.

and cases where the verdicts were considered not excessive. We have gone over those lists again with a view to seeing whether this verdict here can, under all the circumstances, be considered excessive, and it is our opinion that it cannot. We saw, as did this jury, what had been a healthy, intelligent man in middle life, heard him testify and saw his condition, and it plainly indicated that he would probably have to hobble through life practically on one leg, and under the circumstances we cannot say that we would have assessed the damages at any less sum if we had been sitting as a juror. In company with most lawyers, we never did approve of the five thousand dollar limit for negligently causing death, to be found in most of the state statutes. We do not feel quite the same intense responsibility that we would, were there no appeal from our decision, because it is for a sufficient amount to enable the defendant to carry the case to the Supreme Court of the United States if he thinks error has intervened. If the legal liability exists, it is our opinion that the verdict should not be disturbed, and while we have no doubt of the liability, still if we are perchance in error in that regard, there is a remedy in the higher court.

In his reply brief, counsel for the defendant politely calls the attention of the court to the fact that the young man who tried the case for the defendant in the court at Mayaguez, while bright, intelligent, and educated, was largely without experience in such trials, and that defendant speaking Spanish only and being unacquainted with the American procedure in this court, and unable to freely communicate with any attorney who did not speak Spanish, naturally employed the young man to take charge of the case. For this reason, counsel contends that his present appeal to our discretion should have greater force. We

Guzmán v. Herencia.

admit that the young man in question did not take as many exceptions as are sometimes taken by more experienced counsel, but we have long since ceased to think that the taking of exceptions to rulings of the court is always either indicative of the superior wisdom of counsel or of the lack of it in the court. It may be, as suggested, that the transcript shows that we at times gave the young man unusual latitude, perhaps because of this alleged inexperience, but this surely would not militate against the rights of his client, but rather in favor of them. Neither can it be said that the matter was not fully presented to the jury in argument, because, on consent of opposite counsel, in the face of the organic act, we permitted the young man on his request to address the jury in Spanish, and he made an able presentation of the cause in that language to the jury, all of them understanding it perfectly.

On examining the authorities, we find that judges in many cases have sustained verdicts for large amounts, even up to twenty-five thousand dollars, where the injuries were severe, without any compunctions whatsoever, and other judges set aside moderate verdicts, and sometimes even what appear to us to be quite low verdicts, considering the severity of the injuries, in labored opinions where the judge himself appeared to be about as much prejudiced in favor of a small verdict as did some of the juries in other cases as to large ones. While we fully subscribe to the doctrine that courts should always be on the alert to prevent excessive verdicts being brought in on account of mistake, passion or prejudice, still we saw nothing of that kind in the case at bar, but on the contrary it was conducted without anything occurring that in the least could indicate the existence of, or bring about, any such feeling. We do not think any court ought, save for the clearest reasons to do anything that

Guzmán v. Herencia.

might be an invasion of the province of the jury; and it seems to us that greater caution in that regard is necessary in this sort of a suit than would be the case in suits for slander and libel, where the injury can be outlived and passion and. prejudice are more liable to intervene.

Because of the opinions rendered in some of the cases where verdicts were set aside, when they appeared to us to be quite moderate, we are inclined to lend a half willing ear to the remarks of Judge Dunbar in Roth v. Union Depot Co. 13 Wash. 525, 31 L.R.A. 855, 43 Pac. 647, 44 Pac. 253, where he sustained a verdict of fifteen thousand dollars in favor of a child nine years old for the loss of a leg; and we do this in no demagogical spirit, but because we are constrained to believe from an examination of many of such cases that the language of that judge may not have been entirely unwarranted. He said: "We are not willing to say that $15,000 will more than recompense the plaintiff for hobbling through life maimed and disfigured. We are aware that many courts have held in similar cases, that the amount of this verdict was excessive, but we think it probable that if such injuries had happened to the judges themselves, or to members of their families, their views as to excessive damages would have undergone a radical change. The judgment will be affirmed."

The settled law that surrounds this sort of a case, and which forces the court to instruct the jury that only compensatory damages can be recovered, is pretty harsh in itself. Recovery for mere cost of medical attendance and physical suffering for a few months while the bones and wounds are healing and for the loss of earnings, past and future, never wholly compensates the individual who is maimed and disfigured for life, through no fault of his own.

Guzmán v. Herencia.

We freely accord our acknowledgments to counsel for defend-ant who argued this motion, for the courteous phraseology used toward the court. We confess that his painstaking presenta-tion of the matter has driven us to a very extensive scrutiny of the record and the law, but for the reasons stated we do not feel authorized to interfere with what we believe was the province of the jury, and are therefore constrained to overrule the motion for a new trial, and it is so ordered.