[No. 19588.  Department One.  April 13, 1926.]

# FRANK POTTER et al., Respondents, v. WHATCOM COUNTY et al., Appellants.[1]

[1] BRIDGES—STATUTORY PROVISIONS—NEGLIGENCE (3, 5, 10)—LIABILITIES OF COUNTY OR TOWNSHIP—QUESTION FOR JURY. Under Rem. Comp. Stat. § 11407, providing that a county may build such bridges as it is generally interested in where a single township could not undertake the work, or in sparsely settled townships, the liability of a county for injuries sustained in the collapse of a bridge is a question for the jury, where it appears that, on request of a township representing that it was financially unable to build a needed bridge, the county commissioners donated material and money, the county engineer assumed oversight of its construction, and after its construction the commissioners assisted in its protection.

[2] STATUTES (31)—INVALIDITY—SUBJECT NOT EXPRESSED IN TITLE. The Act of 1923 p. 16, entitled an act relating to townships and amending Rem. Comp. Stat., § 11378 and other designated sections of the township act, is not sufficiently broad to warrant the inclusion of the proviso to said section, to the effect that townships shall not have power to construct bridges costing in excess of $300, and that such bridges shall be under the sole jurisdiction and control of the county.

[3] BRIDGES (3)—NEGLIGENCE—STATUTORY PROVISIONS—LIABILITY OF TOWNSHIP. Under Rem. Comp. Stat., § 11378, giving township electors power to raise money for the repair and construction of bridges as deemed necessary, it is liable for injuries sustained in the collapse of a bridge through negligent construction.

[4] SAME (3)—NEGLIGENCE—LIABILITIES OF COUNTY AND TOWNSHIP. Where a county and township were partners in the construction of a bridge, under Rem. Comp. Stat. § 11407, and both were guilty of negligence, both are liable for the damages resulting.

[5] SAME (11)—NEGLIGENCE—ACTIONS—TRIAL—INSTRUCTIONS. In an action for personal injuries sustained in the collapse of a bridge, a requested instruction that the collapse was not of itself evidence of negligence is sufficiently covered by an instruction that the injury suffered is not of itself any evidence of negligence, which must be proved as an affirmative fact and found by the jury by a preponderance of the evidence.

[1]Reported in 245 Pac. 11.

[6] COUNTIES (41)—CONTRACTS—POWERS OF BOARD—PRESUMPTION AS
    TO ULTRA VIRES. Where county commissioners granted assist-
    ance to a township in the construction of a bridge, as authorized
    by Rem. Comp. Stat. § 11407, it will be presumed that they did
    their duty and that their acts were not *ultra vires*.

Appeal from a judgment of the superior court for
Whatcom county, Joiner, J., entered June 2, 1925, upon
the verdict of a jury rendered in favor of plaintiff, in
an action for personal injuries sustained through a
defective bridge. Affirmed.

*Edwin Gruber* and *E. D. Kenyon,* for appellant
Whatcom County.

*Bixby & Nightingale,* for appellant Baker Township.

*Sather & Livesey,* for respondents.

TOLMAN, C. J.—During the summer of 1921, the citi-
zens and officials of Baker township, in Whatcom
county, were agitating the question of the building of a
bridge across a branch of the Nooksack river near
Clipper. The township officials, with others, called
upon the county officials of Whatcom county, informed
them as to the need of the bridge and the financial
ability, or lack thereof, of the township, and asked the
assistance of the county to the end that the bridge be
built. After several conferences, the county commis-
sioners orally agreed with the township officials to
furnish toward the undertaking certain bridge steel,
which had been or was being taken from another bridge
(admittedly a county bridge), which was being rebuilt,
and fifteen hundred dollars in money. No resolution
or minute of the agreement was made a matter of
record by the commissioners.

Thereupon the township proceeded by special elec-
tion to vote bonds to provide for the estimated balance
of the cost of erecting the bridge, and another bridge
not here involved. After the financial part had been

so provided for, the county engineer, apparently at the sole request of the township officials, prepared plans and specifications for the bridge; and after notice by the township calling for bids, oversaw the letting of the contract and the drafting and execution of a written contract between the township and the successful bidder. The county engineer also assumed to exercise oversight over the work as it progressed, put his own inspectors on the job and declined to recognize the right of the township to otherwise provide for inspection and oversight.

When the work was completed, it was apparently accepted by the county engineer and the township officials, and was paid for by the township. The county commissioners, at no time after making what they call their donation, paid any attention whatever to the matter. Some time after the bridge was completed and accepted, the township officials, at their own expense, but (as they claim) after consultation with the county commissioners, put in a sheer log above the bridge for its protection. The county commissioners, on request, supplied a box of powder which was used by the road supervisor to blow out the false work left by the contractor. Still later, the county commissioners agreed to join with the township and with the owner of certain shore lands above the bridge in paying the cost of driving certain piling to protect the shore lands from erosion, and to protect the road, and perhaps incidentally the bridge, from the dangers of high water; but apparently this work, in the main, was done after the bridge collapsed, and we think it has little bearing upon the questions here presented.

In September, 1924, something over two years after the bridge was completed, while respondent Frank Potter was driving over it with a loaded milk truck,

the bridge collapsed, causing the property loss and personal injuries upon which this action is based. After duly presenting his claims to both the county and the township and their rejection by each, this action was begun. The trial was had to a jury, which found a verdict against both defendants in the sum of $4,887.70; and from a judgment thereon, each defendant has appealed.

Each appellant is here contending that, if anyone is liable, it is the other, and more or less admits that the other is liable. There was ample evidence to go to the jury upon the question of defects in the steel furnished by the county commissioners, which were known to, or should have been known to, the municipality charged with the duty of inspection and upkeep. So that that feature need not be further discussed.

We will discuss the points raised in what seems to us their logical order, without reference to the particular appeal under which the particular point is urged.

[1] It is contended that the county was a mere benevolent bystander, donating its material and funds as an act of grace or possibly charity, and hence is not liable. The township, on the other hand, retorts that no law can be pointed out which authorizes county commissioners to donate or give away the taxpayers' money or property for any such purpose, and that, presumptively at least, the county contributed to the building of the bridge under and by virtue of that part of Rem. Comp. Stat., § 11407, which reads:

"Provided, nothing in this act contained shall be construed as prohibiting any county from or denying to any county the power to build, repair, alter and maintain, at the county's expense, such highways and bridges as the county generally is interested in or such as may be of so large cost that a single township could

not undertake the construction of, or such as are located in sparsely settled townships as are unable to construct the same.''

The section referred to defines the powers and duties of townships and of officers thereof, and seems clearly to reserve and preserve in the county the right and duty to construct and maintain highways and bridges of three distinct classes: (1) Such as the county generally is interested in; (2) such as are too expensive to be constructed by a single township; and (3) those in sparsely settled townships, which are financially unable to construct such an improvement. The request for aid and its granting would seem to warrant the deduction that the undertaking was too expensive for a single township; but if not, then we are clear that there is sufficient evidence in the record to take the question of the county's liability to the jury under the third provision of the statute quoted.

[2, 3] Is the township relieved from liability by virtue of that part of subdivision nine, § 4, ch. 13, Session Laws of 1923, p. 16, which reads:

''*And Provided,* That they shall not have power to raise money for the construction, maintenance or repair of bridges, the cost of construction whereof was or will be in excess of three hundred dollars ($300), but such bridges shall be under the sole jurisdiction and control of the county.''

When the bridge was constructed, Rem. Comp. Stat., § 11378, was in effect, which, so far as material here, reads:

''The electors of each town have power, at their annual town meeting:

''Ninth. To vote to raise such sums of money for the repairs and construction of roads and bridges as they deem necessary, . . .'' Rem. 1923 Sup. § 11378.

Under this provision of the statute, *Orrock v. South Moran Township,* 97 Wash. 144, 165 Pac. 1096; and *Nipges v. Mountain View Township,* 100 Wash. 268, 170 Pac. 560, were decided.

Subsequently, and before the bridge collapsed, the act of 1923 took effect; but it is contended that the proviso which we have quoted and which is relied upon by the township, is unconstitutional because the title of the amendatory act is not broad enough to include the matters covered by the proviso. The title of the 1923 act is, "An Act relating to townships and amending §§ 11369, 11375, 11376, 11378, 11404, 11433, 11441, 11445 and 11456 of Remington's Compiled Statutes" (Laws of 1923, ch. 13, p. 14), and contains no reference to counties, their duties or liabilities; and yet the office of the proviso quoted is to place the whole responsibility for bridges costing in excess of three hundred dollars upon the county. The constitutional provision, art. II, § 19, state constitution, seems clearly to have been disregarded, and under our prior holdings we have no choice but to hold the title of the amendatory act insufficient to give effect to the proviso quoted. *Percival v. Cowychee & Wide Hollow Irrigation District,* 15 Wash. 480, 46 Pac. 1035; *State ex rel. Henry v. MacDonald,* 25 Wash. 122, 64 Pac. 912; *State ex rel. Potter v. King County,* 49 Wash. 619, 96 Pac. 156; *Blalock v. Condon,* 51 Wash. 604, 99 Pac. 733; *State ex rel. Arnold v. Mitchell,* 55 Wash. 513, 104 Pac. 791.

Disregarding, then, the act of 1923, there remains no legal obstacle preventing liability on the part of the township.

[4] Nor does the liability of one necessarily relieve the other. Assuming that, primarily, and without any act on the part of the county, the liability would have been solely that of the township, yet under Rem. Comp.

Stat., § 11407, as we have seen, the county had the right, and probably owed the duty, to assist (and, since it could have done the whole, it can do any part less than the whole), and having undertaken to assist, it assumed all of the legal responsibilities attaching thereto and became virtually a partner in the enterprise, charged with the duty of exercising reasonable care to the end that a safe and proper bridge be constructed and maintained. Whether it would be liable for the negligence of the township under these circumstances, it is unnecessary to decide, because there was sufficient evidence of its own negligence to take the case to the jury.

The remaining errors assigned relate to instructions given and refused and are in large part disposed of by what has already been said; as to the remaining, little discussion is necessary.

[5] Both of the appellants complain of the refusal to give a requested instruction to the effect that the collapse of the bridge was of itself no evidence of negligence. We think this point was sufficiently covered by an instruction given as follows:

"You are instructed that the fact that the plaintiff Frank Potter suffered an injury at the time and place alleged, is not in itself any evidence of any negligence on the part of either of the defendants, nor does it raise any presumption of negligence on the part of either of the defendants.

"The presumption of law is that neither of the defendants was negligent. The question of negligence is an affirmative fact and must be proved by the plaintiff by a fair preponderance of the evidence, and unless you find from a fair preponderance of the evidence that either or both of the defendants were guilty of actionable negligence, as that term is defined in these instructions, it will be your duty to return a verdict against the plaintiffs."

Much stress is laid by the county upon the refusal to give certain instructions based upon the theory that the county donated its money and material, or that the acts of the county commissioners in relation thereto were *ultra vires*. Perhaps what we have already said is sufficient to cover this subject, but we may add that the law presumes, until the contrary appears, that such public officers perform their duties and act lawfully; and since Rem. Comp. Stat., § 11407, gives the right and makes it the duty of the county, to act in certain cases, the presumption obtains that the commissioners rightfully acted in the premises, and therefore the requested instructions were properly refused.

Finding no error, the judgment appealed from is affirmed.

HOLCOMB, PARKER, and MAIN, JJ., concur.