13   509
15   375

[No. 2099.   Decided January 18, 1896.]

# I. C. RICHARDS, *Appellant*, v. KLICKITAT COUNTY *et al.*, *Respondents*.

COUNTIES — VALIDATION OF INDEBTEDNESS — LEGALITY OF ELECTION NOTICE — ISSUANCE OF FUNDING BONDS — WARRANTS FOR REBATE OF TAXES.

Under the act of 1895 (Laws, p. 465), providing for the funding of the outstanding indebtedness of counties by the issuance of bonds, counties are authorized to fund indebtedness legally incurred by them prior to the adoption of the state constitution.

The failure of the county commissioners to provide, in a resolution calling an election for the validation of illegal indebtedness, for notice of the election and that it should be published in a newspaper of general circulation in the county, will not render such validation election void, when it appears that notice was actually and properly given in the newspaper of largest circulation in the county.

The fact that the several classes of indebtedness as set forth in the resolution and notice calling an election for validation thereof did not agree with the amounts actually outstanding in the different classes, would not render the validation inoperative when the submission was in separate classes and the voter was notified of exactly the warrants which he was called upon to validate.

Warrants issued in rebate of taxes illegally levied, in lieu of the money wrongfully collected, need not be validated, although issued after a county had passed its limit of indebtedness.

Mistake in stating the total amount of the bonds required in a notice for bids will not invalidate the issuance of bonds, when the notice correctly stated the series, the amount of each series, and the time that each series was to run, the law requiring that bids should be made by the series separately.

Appeal from Superior Court, Klickitat County.— Hon. SOLOMON SMITH, Judge.   Affirmed.

*George A. Hurd, Coleman & Quinby,* and *W. B. Presby,* for appellant.

*C. H. Spalding* (*H. S. Wilson,* of counsel), for respondents.

The opinion of the court was delivered by

Dunbar, J.—This is an action brought by a taxpayer of Klickitat county to enjoin the county from issuing negotiable bonds to fund certain outstanding indebtedness of the county. A portion of the warrants attempted to be funded were outstanding at the time of the adoption of the state constitution; certain other of the warrants were issued on November 12, 1889, the date of the adoption of the constitution, for services rendered to the county prior to November 1, 1889, the claims for which services were duly audited, allowed and ordered paid prior to the date of issuance; third, warrants issued between November 12, 1889, and March 9, 1893.

It is conceded that the warrants outstanding at the time of the adoption of the state constitution were issued for county purposes and were within the legal limit of indebtedness as defined by the laws governing county indebtedness at the time of their issuance. The warrants issued between November 12, 1889, and March 9, 1893, and outstanding, it is conceded were issued in excess of one and one-half per cent. of the assessed valuation of the county, but such warrants were attempted to be validated under the act of March 9, 1893, entitled, "An act to enable counties to validate certain indebtedness attempted to be incurred on the part of such counties by the corporate authorities thereof in excess of their legal authority." The county commissioners under this act, on the 7th day of July, 1894, by resolution, ordered a special election to be held on the 4th day of September, 1894, for the purpose of submitting to the qualified voters of Klickitat county the question of validating this indebtedness. The election was held in pursuance of said resolution. More than three-fifths of the qualified

electors of the county voting at this election voted in favor of validating the warrants submitted to their consideration at such election.

We do not think the contention of the appellant, that the county has no power to fund these outstanding warrants, can be sustained. It is true that a portion of these warrants were issued prior to the adoption of the state constitution. But we think that a reasonable construction of chapter CLXX· of the laws of 1895 (p. 465), "An act providing for authorizing counties, cities and towns to issue bonds to fund outstanding indebtedness," must lead to the conclusion that such warrants and such indebtedness were contemplated by that act. The first section of the act provides that:

"Any county, city or town in the State of Washington which now has or may hereafter have an outstanding indebtedness evidenced by warrants or bonds, whether issued originally within the limitations of the constitution of this state, or of any law thereof, or whether such outstanding indebtedness has been or may hereafter be validated or legalized in the manner prescribed by law, may, by its corporate authorities, provide by ordinance or resolution for the issuance of funding bonds with which to take up and cancel such outstanding indebtedness in the manner hereinafter described."

These warrants represent an indebtedness against the county as certainly and effectively as though they had been issued after the inauguration of the state government. They have to be considered in determining the indebtedness of the county, and it was no doubt the intention of the law to provide for their disposition in the same manner as warrants that were issued subsequent to the adoption of the state constitution.

Here we may, out of its order, dispose of the contention that the warrants issued upon the 12th of November, the date of the adoption of the state constitution, being concededly warrants issued for services rendered prior to the date of their issuance, fall within the same provisions of law as do warrants which were issued prior to the date of the adoption of the constitution. See *Childs v. Anacortes*, 5 Wash. 452 (32 Pac. 217).

It is objected by the appellant that the third class of warrants were not validated for the reason that the board of county commissioners did not specify in their resolution calling for the election that notice of said election should be given, and did not designate a newspaper of general circulation in the county in which notice of such election should be published; and, second, because the several classes of indebtedness as set forth in the resolution and notice given of the election do not in all respects agree with the amounts that were actually outstanding in the different classes. It appears from the testimony, and is found by the court, that while the resolution omitted the mentioning of the newspaper and the direction of the notice, notice was actually given in a newspaper in the county, which newspaper was not only a paper of general circulation, but, as conclusively appears, was a newspaper of the largest circulation of any paper in the county, and had a larger circulation than all the other papers in the county. So that the notice to the voters was actually given, and this court in accordance with universal authority has so often held that mere irregularities, in question of notice, will not defeat an election, that it is scarcely worth while to enter into a discussion of that question here. See

*Williams v. Shoudy,* 12 Wash. 362 (41 Pac. 169); *Seymour v. Tacoma,* 6 Wash. 427 (33 Pac. 1059); *State, ex rel. Bailey, v. Smith,* 4 Wash. 661 (30 Pac. 1064).

In the last mentioned case this court said:

"In all such cases there must appear some substantial reason why courts should interfere to overthrow an election, in the absence of any allegation of fraud, to the effect that, had there been a larger number of votes cast, the result would have been different."

The result in this case could not have been affected by the omission of the commissioners to specify the notice in the resolution, because the notice and competent notice was actually given.

The other objection is equally without merit, for the submission of these warrants for validation was in separate classes and the voter was notified of exactly the warrants which he was called upon to validate, and he was in no way misled. The only class of warrants which could have been affected and which was in excess was that where the outstanding warrants exceeded the amounts set out in the resolution, and those were warrants which did not need any validation, being rebate on taxes. This money was illegally collected by the county on account of excess of taxes levied, was voluntarily refunded by the county in the shape of warrants in lieu of the money which it had received and which it confessed had been wrongfully received. See *Hintrager v. Richter,* 85 Iowa, 222 (52 N. W. 188).

So far as the notice for bids for the bonds is concerned, while there was a mistake in the total amount, such mistake misled no one for the reason that the notice correctly stated the series, the amount of each series, and the time each series was to run; and inasmuch as the law provides that bids shall be made by

the series separately, the attention of the bidders was called directly to the different series instead of to the total amount named in the notice, and no bidder could have in any way been misled by this mistake.

The judgment in all things will be affirmed.

SCOTT and ANDERS, JJ., concur.