[Nos. 20304, 20317.   Department Two.   October 26, 1926.]

THE STATE OF WASHINGTON, *on the Relation of D. E. Ferguson, Plaintiff*, v. THE SUPERIOR COURT FOR KING COUNTY, *Respondent.*

THE STATE OF WASHINGTON, *on the Relation of George S. Ryan, Plaintiff*, v. THE SUPERIOR COURT FOR KING COUNTY, *Respondent.*[1]

[1] STATUTES (43)—IMPLIED REPEAL.   Rem. Comp. Stat., § 5157, prescribing a minimum fifteen day notice for special elections, was repealed as to elections in class A counties by the act of 1923 (Rem. 1923 Sup., § 5148-3) prescribing a minimum thirty day notice for the holding of such election, notwithstanding the act of 1923 especially refers to sections amended and does not expressly repeal or mention § 5157.

[2] ELECTIONS (8)—JUDGES (3)—ELECTION TO FILL VACANCY—CONSTITUTIONAL AND STATUTORY PROVISIONS.   An election to fill a vacancy in the position of judge of the superior court is a special election in the sense of requiring notice to the electors, notwithstanding Const. art. 4, § 5, provides for the holding thereof at the next succeeding general election, which provision is not self-executing; and it is within the power of the legislature to fix a minimum of thirty days notice, so that a vacancy occurring less than thirty days prior to a general election cannot be filled at such general election nor until the next general election two years hence.

Certiorari to review judgments of the superior court for King county, Griffiths, J., entered October 18, 1926, directing the county auditor to give notice of a special election; and Hall, J., entered October 20, 1926, denying a writ of prohibition to prevent the giving of such notice.   Reversed.

[1]Reported in 250 Pac. 66.

*Ewing D. Colvin, Harry A. Rhodes* and *William G. Long,* for relator Ferguson.

*Chadwick, McMicken, Ramsey & Rupp, Hugh M. Caldwell* and *John P. Lycette,* for relator Ryan.

*H. E. Foster* and *William A. Gilmore,* for respondent Griffiths.

*Ewing D. Colvin, Harry A. Rhodes* and *William G. Long,* for respondent Hall.

PARKER, J.—These are certiorari proceedings in this court wherein the relators seek review and reversal of two judgments rendered by the superior court for King county.

The first is a judgment of the superior court for King county, Honorable Austin E. Griffiths presiding, awarding, upon application of John Quient, a writ of mandate commanding this relator, D. E. Ferguson as auditor of King county, to give notice to the electors of that county for the holding of an election at the time of the general election to be held November 2, 1926, to elect an incumbent to one of the positions of judge of the superior court for that county for the remainder of the regular four-year term expiring in January, 1929; a vacancy having been caused in that position by the recent resignation of Honorable Charles H. Paul, the duly elected incumbent for that full four-year term.

The second is a judgment of the superior court for King county, Honorable Calvin S. Hall presiding, denying an application made by George S. Ryan for a writ of prohibition prohibiting this relator, D. E. Ferguson, as auditor of King county, and the other members of the election board of that county, from proceeding with the giving of notice for such an

election and from further providing for the holding of such an election.

While these two proceedings are separate in the bringing of the two judgments in question to this court for review, there are certain conceded facts common to both cases which, to our minds, become decisive of both cases, calling for a correct disposition of each in harmony with the correct disposition of the other. We, therefore, dispose of both of them by this decision.

At the general November election of November, 1924, Honorable Charles H. Paul was duly elected to one of the positions of judge of the superior court for King county for the full four-year term, commencing in January, 1925, and expiring in January, 1929. At all times thereafter until October 15, 1926, Judge Paul was the duly elected, qualified and acting judge occupying that position. He tendered to the governor his resignation from that position, which became effective on October 15, 1926. The governor accepted the resignation, and on the following day, October 16, 1926, appointed Honorable Walter B. Beals to the position, who immediately qualified by taking his oath of office and thereupon became, for the time being, the duly qualified and acting incumbent of the position.

Immediately upon the resignation of Judge Paul becoming effective and a vacancy in the position being so created, this relator, D. E. Ferguson, as auditor of King county, evidenced his intention not to call for or give notice of an election to fill the vacancy by the electors at the coming general election to be held November 2d. Thereupon John Quient, a voter and taxpayer of King county, commenced a mandamus action in the superior court of that county against Ferguson as auditor of that county, seeking a writ of mandate compelling Ferguson as auditor to call for and give

notice of such an election. Proceedings were had in
that action in the superior court, Honorable Austin E.
Griffiths presiding, resulting in a judgment awarding
a writ of mandate directing Ferguson as auditor to
call for and give notice of the holding of such an
election at the time of the holding of the general elec-
tion on November 2, 1926. It is to review and reverse
that judgment that the first of these certiorari pro-
ceedings is being prosecuted in this court.

Soon after the awarding of the writ of mandate by
the superior court in the above mentioned mandamus
action, George S. Ryan, a voter and taxpayer of King
county, commenced a prohibition action in the superior
court for King county against Ferguson as county au-
ditor and the other members of the election board of
that county, seeking a writ of prohibition prohibiting ·
them from calling, providing for or holding an election
to choose an incumbent for the position in question at
the general election to be held November 2, 1926. The
facts appearing in the prohibition action, so far as we
need here notice them, are the same as above related
as appearing in the mandamus action; and, in addition
thereto, there were shown the proceedings had and the
judgment rendered in the mandamus action. Pro-
ceedings were had in the prohibition action in the su-
perior court, Honorable Calvin S. Hall presiding, re-
sulting in a judgment denying the awarding of a writ
of prohibition as prayed for. It is to review and re-
verse that judgment that the second of these certiorari
proceedings is being prosecuted in this court.

We have noticed that the vacancy in the position of
judge of the superior court here drawn in question
occurred by the resignation of Judge Paul on October
15, 1926; that is, but eighteen days prior to November
2, 1926, the date of the holding of the next general

election. Counsel who are here seeking to uphold the judgments of the superior court seem to proceed principally upon the theory that the following constitutional and statutory provisions are controlling in support of those judgments. In § 5, of art. 4 of our state constitution, we read:

"If a vacancy occurs in the office of judge of the superior court, the governor shall appoint a person to hold the office until the election and qualification of a judge to fill the vacancy, which election shall be at the next succeeding general election, and the judge so elected shall hold office for the remainder of the unexpired term."

In Rem. Comp. Stat., § 5157 [P. C. § 2086], a section of our general election law in force in 1922, we read:

"It shall be the duty of each county auditor to give at least thirty days' notice of any general election, and at least fifteen days previous to any special election, by posting or causing to be posted up, at each place of holding election in the county, a written or printed notice thereof; said notice to be as nearly as circumstances will admit as following:　[Here follows a tentative form of notice]."

[1]　Now assuming for the present that such an election as is here drawn in question is a special election, in the sense that statutory notice thereof is necessary to its validity, we are met with what seems to us is a repeal of Rem. Comp. Stat., § 5157, above quoted, by the plain provisions of ch. 53, Laws of 1923, p. 172, enacted that year, at least in so far as that act has reference to notices of elections in class A and first class counties, King county being a class A county. That act, in so far as we need here notice its language, reads as follows:

"AN ACT relating to elections, creating an election board, validating certain elections and proceedings had thereunder, amending Sections 5143, 5144, 5147 and

5148 of Remington's Compiled Statutes, and declaring that this act shall take effect immediately.

"Section 1.   That Section 5143 of Remington's Compiled Statutes be amended to read as follows:

"Section 5143.   All state and county elections in class A counties and counties of the first class, whether general or special, and whether for the election of federal, United States senatorial or congressional, or state, legislative, county or precinct officers, or for the submission to the voters of any question for their adoption and approval or rejection, shall be held on the first Tuesday after the first Monday in November, in the year in which they may be called: *Provided,* That this section shall not be construed as fixing the time for holding the elections for the recall of county officers or primary elections, nor special elections to fill vacancies for members of the Congress of the United States or members of the State Legislature.

. . .

"Sec. 3.   That Section 5147 of Remington's Compiled Statutes be amended to read as follows:

"Section 5147.   The chairman of the board of county commissioners, the county auditor, and the prosecuting attorney in class A counties and counties of the first class, shall constitute an election board for all elections held under the provisions of this act, and it shall be the duty of such board to provide places for holding elections; to appoint the precinct election officers; to provide for their compensation; to provide ballot boxes and ballots or voting machines, poll books and tally sheets, and deliver them to the precinct election officers at the polling places; to publish and post notices of calling such elections in the manner provided by this act and to apportion to each city, town or district, its share of the expense of such election. .

. .

"Sec. 7.   The election board shall give notice of all elections to be held under the provisions of this act, by one publication in a newspaper of general circulation in the county, not less than thirty (30) days nor more than forty (40) days before the date of election,

21—140 WASH.

and by posting a copy of such notice at each polling place for such election not less than thirty (30) nor more than forty (40) days before the date of election. Said notice shall contain the time and place of holding said election; the hours during which the polls shall be open; the offices to be filled and the proposition to be voted upon at such election, and such notice shall be the only notice required of all elections to be held under the provisions of this act.'' [Rem. 1923 Sup., §§ 5143, 5147, 5148-3.]

This act provides for the holding of all elections, ''whether general or special,'' in counties of the class to which King county belongs, except as to the time of holding certain specified special elections with which we are not here concerned. It expressly makes it the duty of the election board, which it creates, ''to publish and post notices of calling such elections in the manner provided by this act.'' It expressly provides for the giving of notice of all elections ''to be held·under the provisions of this act'' for a period of not less than thirty days nor more than forty days before the date of election. It is true, as pointed out by counsel, this act has no express or general repealing clause, and that it purports to amend certain sections, specifying them by number, and does not specify Rem. Comp. Stat., § 5157, above quoted, as being amended or repealed.

But the act is more than a mere amendatory act; it contains several sections, among which is § 7 of the Laws of 1923, p. 176 [Rem. 1923 Sup., § 5148-3] above quoted, which are not in form amendatory, but are in form direct and original. Manifestly, the minimum thirty-day time limit for all notices of elections ''to be held under the provisions of this act,'' that is, all elections, ''general or special,'' is wholly repugnant to the minimum fifteen-day limitation pre-

scribed by the old law found in Rem. Comp. Stat., § 5157, above quoted. It is to be noted that the minimum fifteen-day notice provision of the old law is found in our general election law as then existing; so this is not a question of repealing a special law by repugnant provisions of a newly enacted general law, but is simply a question of repealing a provision of a general law by repugnant provisions of a newly enacted general law.

The rule here applicable is well stated in the text of 25 R. C. L. 914, as follows:

"If an act is so repugnant to, or so contradictory of, or so irreconcilably in conflict with, a prior act that the two acts cannot be harmonized in order to effect the purpose of their enactment, the later act operates, without any repealing clause, as a repeal of the first to the extent of the irreconcilable inconsistency. A later statute without any repealing clause must be held to repeal an earlier one where under no reasonable hypothesis can the provisions of both be construed as coexisting."

Our own decisions are in full harmony with this view of the law. *State v. George,* 84 Wash. 113, 146 Pac. 378; *Swanson v. School Dist. No. 15,* 109 Wash. 652, 187 Pac. 386. We conclude that Rem. Comp. Stat., § 5157, above quoted, in so far as it prescribes a minimum fifteen-day notice of special election was effectually repealed by the later act; ch. 53, Laws of 1923, p. 172. To what extent other provisions of that section are repealed by the new act, we are not here called upon to notice. It follows that there is no statutory authority for the calling or giving notice of the holding of such an election as is here drawn in question, other than the statutory authority of ch. 53, Laws of 1923, p. 172, prescribing the minimum thirty-day notice for the holding of such election. Manifestly,

such a notice could not be given within the eighteen-day period commencing with the resignation of Judge Paul on October 15, 1926, and ending upon the day of the general election, November 2, 1926.

[2]   Now it seems plain to us that an election to fill a vacancy in a position of judge of the superior court is at all events a special election, in the sense that notice to the electors of such an election is necessary to its validity.   It is true that our constitutional provision above quoted requires the holding of such an election "at the next succeeding general election," and this, of course, means that such election cannot be held at any other time, but that does not make it a general election of that nature which can be legally held without notice to the electors in addition to that notice which is imparted to the electors by the language of the law alone.   The electors may be charged with notice that, at all general elections held immediately prior to the beginning of regularly prescribed terms of office, they are called upon then to vote for incumbents of all such offices for the ensuing regular term. But the statute does not of itself advise the voters that they will be called upon to vote for incumbents to fill a vacancy in any unexpired term.   That is something the electors can be advised of, in a legal sense, only by notice, and as to the manner of giving such notice we think that is a matter of legislative control.   In 9 R. C. L. 990, we read:

"It may be stated as a general principle that the calling of an election contemplates the giving of some notice.   And it is universally the practice to direct by statute both the manner and the time of giving notice of all elections—those fixed at regularly recurring intervals as well as special elections called for a particular occasion.   There is, however, a difference in the necessity for notice in the two classes of elections, and

this difference has been recognized by the courts in passing upon questions arising from a failure to comply with the requirements of the law. As to general elections it has been well established that the fixing of the time for the election either by law or by the constitution is in itself notice which all electors must heed; and hence where an officer is charged with the duty of giving notice of such an election or with the issuing of a proclamation thereof, his failure to perform his duty will not invalidate the election. Such special provision for notice is held to be only a reminder to electors of what the law has already provided. It is directory merely, not mandatory, and is in no way connected with the elector's right to the elective franchise, nor is it a condition precedent to be performed by another to entitle him to exercise the right. Where, however, the time for holding an election is not prescribed by law, but is fixed by the officer vested with authority to call it, the voters cannot be expected to have or to take notice thereof unless notice be given or a proclamation issued. And so a requirement to this effect must be considered as mandatory and its performance essential to the validity of the election. It would seem proper to apply the same rule when the special election is held at the same time as a general election, although this conclusion is not undisputed.''

In *State ex rel. Sampson v. Superior Court,* 71 Wash. 484, 128 Pac. 1054, it was squarely held that a number of votes cast for the election of an incumbent for an unexpired term of one of the positions of judge of the superior court for King county at a general election, the duly elected incumbent having resigned sometime prior thereto, thus creating a vacancy, did not constitute a legal election to fill the remainder of the unexpired term, because no notice of the holding of an election to fill the vacancy was given. Considerable is said in the somewhat exhaustive opinion in that case touching the lack of free expression on the part of the

electors at such an election for want of notice and the injustice to the electors in that particular case because of the very small number of votes cast at the election there in question. But, after all, the real legal basis of that decision seems to us to have been the fact that there was no notice of the election, and that fact alone rendered the attempted election invalid. That this is the view of the law then entertained by the court is rendered plain by the following language of the opinion in that case:

"The authorities leave little doubt as to the proper rule of law to be applied in cases of this character. In *People v. Porter*, 6 Cal. 26, involving an election to fill a vacancy in the office of county judge, the law there providing that vacancies in such offices shall be filled by election at the next general election after the vacancy occurs, and that notice of election shall be given, no notice was given and it was held the election was void on that account. The court concedes the general rule that the requirement of notice is directory, and that failure to give such notice will not vitiate an election, and then holds that such rule applies only to general or regular elections, and says:

" 'But it has nowhere been decided that such notice is not essential to the validity of all special elections. . . . It is essential to the proper exercise of the elective franchise, that the voters should be informed of the offices in which vacancies have occurred, before each general election in order that they may select fit and proper persons to perform the duties of such offices.'

"The court then evidences the necessity for so holding by referring to the fact that more than four thousand votes were cast at the election, but only twelve hundred were cast for the office in question. If such reasoning impelled that court to so hold, what should be said of a judicial election where more than thirty-two thousand votes were cast out of which the claimant received thirteen? Another California case

is *People ex rel. Leverson v. Thompson,* 67 Cal. 627, 9 Pac. 833, where it is said:

" 'Notice to the electors lies at the foundation of any popular system of government. It has sometimes been held that the existence of a law fixing the time of an election, and the offices to be filled, is of itself notice. It may be conceded that when a term of office is to expire at a certain date after a general election, no other election to intervene, the electors take notice the office is to be filled at such general election. Some decisions have gone so far. But it is well settled that when a vacancy has occurred by reason of death or resignation, the voters are not bound to take notice of such vacancy, and the casting of votes for a candidate or candidates to fill the vacancy does not constitute an election.'

"*State ex rel. Bolton v. Good,* 41 N. J. L. 296, lays down the same rule. *Cook v. Mock,* 40 Kan. 472, 20 Pac. 259, holds notice essential in case of special elections to fill vacancies, and says:

" 'The electors may well be presumed to know when the regular terms of city offices begin and end. They usually do know it, in fact, but in respect to vacancies it is entirely different.' "

Such, we think, is the view of the law adopted by this court, though the learned editors of Ruling Case Law, in the concluding words above quoted therefrom, seem to be of the opinion that the decisions are not harmonious on this subject. Our decision in *State ex rel. Sears v. Gilliam,* 93 Wash. 248, 160 Pac. 757, is not out of harmony with this view. Indeed, observations made in that decision, it may be argued, support the view that a vacancy in the office of judge of a superior court must occur before the beginning of the time for the setting of the primary election machinery in motion, in order to legally warrant the holding of an election at the next succeeding general election to fill the vacancy. But we are not called upon to go that far in this case. It is, we think, decisive of this case

that the vacancy did not occur a sufficient time prior to the holding of the general election to enable the giving of the statutory thirty-day notice of an election to fill the vacancy.

It is true, as pointed out by counsel, this court has held in *Seymour v. Tacoma,* 6 Wash. 427, 33 Pac. 1059, and *Richards v. Klickitat County,* 13 Wash. 509, 43 Pac. 647, and perhaps in other cases, that mere irregularities in an election notice, even of a special election, will not necessarily invalidate the result of such an election; but no decision has come to our notice, and we think none can be found, holding that such an irregularity as would be caused by the giving of only seventeen or eighteen days' notice, when the minimum statutory period for giving a notice is thirty days, can be overlooked or such notice considered as a substantial compliance with the statutory notice requirements.

Our decision in *State ex rel. Sampson v. Superior Court,* 71 Wash. 484, 128 Pac. 1054, Ann. Cas. 1914C 591, we think, renders it plain that the constitutional provision is not self-executing. It is for the legislature, and not the courts, to provide the notice for and the method of conducting elections, general or special. The only express limitation we see in the constitution is that such an election, as is here drawn in question, shall be held at the time of the general election. It is plain, we think, that some notice must be given, and we think it equally plain that it is for the legislature to prescribe the time and manner of giving such notice. A minimum of thirty days having been expressly prescribed by the legislature as the time for the giving of such a notice and it being impossible to give such a notice for want of time, we conclude that the proposed election here in question cannot be lawfully held.

Some other questions are presented and interestingly argued, but in view of our conclusions as above indi-

cated, we think such questions become of no consequence in our present inquiry.

The judgment of the superior court in the mandamus action awarding the writ of mandate is reversed with directions to the superior court to quash the writ issued by it.

The judgment of the superior court in the prohibition action denying a writ of prohibition as prayed for is reversed with directions to the superior court to grant the writ as prayed for.

We direct, subject to the necessary approval of the other members of this court, as provided by Rem. Comp. Stat., § 10 [P. C. § 8655], that remittitur be immediately transmitted to the superior court evidencing our disposition of both of these cases.

TOLMAN, C. J., MAIN, and ASKREN, JJ., concur.

MACKINTOSH, J. (concurring)—I concur in the result for the reason set forth in the opinion, that a vacancy in a judicial position cannot be filled at any election without at least thirty days' notice of such election; but I wish to express my view that a vacancy in a judicial position cannot at any time be filled at a general or special election unless nominations of candidates to fill that vacancy have been regularly made under the direct primary, the legislature not having provided any other machinery to carry into effect the constitutional provisions.