[No. 21981. Department Two. August 24, 1929.]

LLOYD E. DUNN, *Appellant*, v. THE CITY OF CENTRALIA et al., *Respondents.*[1]

*W. N. Beal,* for appellant Dunn.

*Cleland & Clifford,* for appellants *Kresky et al.*

*J. H. Jahnke (Preston, Thorgrimson & Turner,* of counsel), for respondents.

[1]Reported in 280 Pac. 26.

PARKER, J.—The plaintiff, Dunn, an elector and taxpayer of the defendant city, commenced this action in the superior court for Lewis county, seeking injunctive relief restraining the city and its officers from issuing and selling special public utility bonds of the city to pay for the acquisition and construction of a large hydro-electric power plant as an addition to its present electric current distributing system; and restraining the city and its officers from acquiring such plant as proposed. A trial upon the merits in the superior court resulted in findings and judgment denying to the plaintiff the relief prayed for and dismissal of the action, from which he has appealed to this court.

It is necessary that the bond issue which the city authorities purpose to make, and the acquisition of the proposed plant, shall be authorized by a vote of the electors of the city, in order to be lawfully consummated. Our problem is as to whether or not official notice of the special election which, it is claimed, authorized such bond issue and acquisition of the plant, was given, as to period of publication, substantially as required by law.

The controlling facts are not in dispute and may be summarized as follows: The city has, for a number of years past, owned and operated an electric current distributing system by which it has distributed, for its own use and for sale for private use within the city, electric current, the city purchasing such current from private producers. The city does not have any electric current producing plant. The city commission, contemplating acquiring such a plant, and it being necessary to have authority therefor by vote of the electors of the city at a special election, on January 22, 1929, passed an ordinance providing for the calling of such special election, to be held February 25, 1929, submitting to the voters of the city, for adoption, a proposed

system and plan for a hydro-electric producing plant, the acquisition of necessary property rights incident thereto, the construction of such plant and the issuance of $650,000 of special utility bonds of the city to aid in paying the cost thereof.

Official statutory notice of the election in due form was published in the official daily newspaper of the city on January 25, 1929. This official notice was not published on any other day in the official newspaper of the city, nor was it published at any time in any other newspaper published or having any circulation in the city. No other official notice of the election was given. Touching other unofficial information which the voters of the city acquired of the pending election, prior to the date of its holding, the trial judge found, as the evidence warranted, as follows:

"On said 25th day of January, 1929, notice of said election was given by causing the same to be posted at the polling place in each election precinct within the city of Centralia; . . . thereafter news items calling the attention of the voters of the city of Centralia and its citizens to said pending election, and of the proposition to be submitted to the qualified voters of said city on the 25th day of February, 1929, was continuously published in said Centralia Daily Chronicle and in the Centralia Tribune, a weekly newspaper published and printed within the city of Centralia; that each of said newspapers, during said time, had a wide circulation within the said city of Centralia, and were regularly distributed and delivered to all of the legally registered voters within the said city; that public mass meetings were held within the said city between the time of the posting of said election notice and said election where the voters were informed of the proposition to be submitted to them at said special election, and that said election and the proposition to be submitted thereafter was likewise called to the attention of the voters at various other and numerous public meetings and gatherings, during said time, and that

during said time circulars, pamphlets and posters were distributed in each of the election precincts. of said city, and numerous persons solicited the independent voters in each of the election precincts of said city to vote for or against the proposition to be submitted at said special election, . . ."

Some other statements are made by the trial judge in his findings which are, in substance, but inferences which he draws from his findings of facts above quoted. The trial judge further found as follows:

"At the time and place of holding said election, there were 3,725 registered and qualified electors within said city; that 1,460 qualified electors voted in favor of said proposition, and 838 against the same."

The statutory notice requirement for a special election of this nature, in so far as the time of its giving is concerned, is found in our city and town public utilities statute, § 9489, Rem. Comp. Stat., and reads as follows:

"Ten days' notice of such election shall be given in the newspaper doing the city or town printing, by publication in each issue of said paper during said time."

There has not been called to our attention, and we are not aware of, any other prescribed statutory notice for such an election; so we proceed upon the assumption that the posting of the notices was no part of the official notice prescribed by the statute, and that therefore the posting of the notices was unofficial, the same as all other unofficial information acquired by the electors.

The city's defense and the trial court's decision manifestly were rested upon the theory that, notwithstanding the want of publication of the official notice of the election in the city official newspaper during the period and for the number of publications required by the statute above noticed, there was, by the single offi-

cial publication, such substantial compliance with the statute as to render the election valid, when viewed in the light of the general unofficial publicity informing the voters of the coming election and its purpose.

We may concede that the statutory requirement of giving official notice, even of a special election such as this, has often been held to be in a measure directory, in the sense that such requirement need only be substantially complied with when there is a large measure of general unofficial information concerning the coming election, reaching the public through newspapers, other printed circulated matter, posting of printed matter, discussion in public gatherings, etc.

We think, however, it should not be held that the slight quantity of official notice given of this election, as compared with that prescribed by statute, becomes a substantial compliance with the statute. This court has liberally applied the substantial compliance doctrine in upholding the validity of special elections, but we think it has not in any sense, directly or inferentially, held that an official notice, such as this, though aided by unofficial information as was this notice, is sufficient to constitute a substantial compliance with a statutory requirement such as this. This official notice was but a slight step short of no official notice.

If the affirmative vote had, in number, been a majority of all the registered votes of the city, and thus all but conclusively shown that the result would have been the same, even with the official notice given strictly as prescribed by the statute, it is possible the single publication might be held to be in its effect, in the light of the unofficial publicity here shown, a substantial compliance with the statute. But we think it cannot be said in this case, with a sufficient degree of certainty, that there would have been a majority affirmative vote at the election had the official publication of notice of

the election been given as prescribed by the statute.

We now notice in chronological order such prior decisions of this court, touching the question of the sufficiency of official special election notices, as we regard of any substantial aid in our present inquiry.

In *Seymour v. Tacoma*, 6 Wash. 427, 33 Pac. 1059, there was involved a special election notice given under a city ordinance provision which, as stated in the opinion,

". . . directed the city clerk to publish the election notice in the city official newspaper for 'thirty days next preceding said election,' and to post the same 'for the like period' at all the places designated as voting places."

The state statute, however, required only publication of the notice in the city official newspaper for a period of thirty days. The notice was published in the official newspaper of the city a full period of thirty days, but that did not include the day immediately preceding the election. The notices were posted only twenty-six days preceding the day of election, as prescribed only by the ordinance. It was held that there was a substantial compliance with the law in giving official notice of the election. There was considerable unofficial information given to the voters of the pending election. Plainly, we think that decision is not controlling in this case, particularly because the notice was in fact published for a period of thirty days, being defective only in that the day immediately preceding the election was not covered by the publication; and the ordinance need not have required it to be given by additional posting. We think that decision does not call for the holding of this official notice to be a substantial compliance with the law.

In *Richards v. Klickitat County*, 13 Wash. 509, 43 Pac. 647, there was involved a properly published

notice as to form and time, of a special validating indebtedness election of the county. The commissioners, in their resolution providing for the election, failed to designate a newspaper in which the notice should be published, as by statute (Laws of 1893, p. 182) it was made their duty to do. In the opinion, it is said:

"It appears from the testimony, and as found by the court, that while the resolution omitted the mentioning of the newspaper and direction of the notice, notice was actually given in a newspaper of the county, which newspaper was not only a paper of general circulation, but, as conclusively appears, was a paper of the largest circulation of any paper in the county, and had a larger circulation than all the other papers in the county."

The failure of the commissioners to name the newspaper in their resolution was manifestly but a minor technicality and of no substantial consequence, in view of the fact that the publication was made in the very newspaper that the commissioners ought to have named in their resolution. Indeed, it is inferable from the language of the opinion that the commissioners did sanction the publication of the notice in the newspaper in which it was published. The election was held valid. Clearly, that decision does not sanction the overlooking of such defect in notice as is here in question.

In *State ex rel. Mullen v. Doherty,* 16 Wash. 382, 47 Pac. 958, 58 Am. St. 39, there was drawn in question a notice of a special freehold charter amendment election of the city of Tacoma, to be held on April 7, 1896, at the same time as the city general election. The case is stated in the opinion of this court as follows:

"The provision of the statute, . . . makes it the duty of the legislative authority of the city to—

" 'Give at least ten days' notice in each election district of said city by publishing such notice in two daily

newspapers published in said city, and by *causing the same to be posted at each polling place in the several election districts thereof*, of an election, which notice shall specify the object for which said election is called.' Sec. 3, act of March 24, 1890, Session Laws 1890, p. 216.

. "Section 4 of the ordinance submitting the proposed amendment is as follows:

" 'That it shall be the duty of the city clerk, and he is hereby ordered and required, to post at each of the polling places within the city of Tacoma, on or before said April 7th, 1896, so that the same shall be prominently posted upon that date, a full, true and correct certified copy of each and every one of the proposed amendments to. the said city charter as contained in this ordinance, for reference by electors and election officers.'

"The clerk . . . did not post certified copies of the proposed amendments in the different polling places within the city. But the court found that newspaper clippings *containing copies of the proposed amendments 'were duly posted in all of the voting booths* of the city of Tacoma by the election officers at said voting places.' "

The notice of election was published in two daily papers as prescribed by the statute. The defect, apparently, was only in failing to post notices for the prescribed period. There was, however, the posting of the proposed amendments at the voting booths by the election officers, and there was a large measure of publicity of an unofficial character given throughout the city for a considerable period prior to the day of the election. In view of all of these facts, the giving of the official notice was held to be, in its effect, a substantial compliance with the statute. We think that the single publication here in question was a much more flagrant defect in the publication of the notice than the failure of posting in that case.

In *State ex rel. Sampson v. Superior Court*, 71

Wash. 684, 128 Pac. 1054, there was an attempted holding of a special election; that is, certain electors voted at the general county election for persons to fill a vacancy in the office of judge of the superior court, which should have been then submitted to the electors by a prior notice of such an election as a special election, but no notice whatever was given of any such special election. It was held that the voting at that time did not constitute a valid election. True, the small number of votes there cast, and other circumstances attending the attempted election, were stressed by the court in its opinion as a reason for holding to the view that there was in fact no election; but the opinion also contains observations rendering it plain that the court was of the opinion that such an election could not be held without some substantial compliance with the statutory requirement of official notice thereof.

In *Rands v. Clark County*, 79 Wash. 152, 139 Pac. 1090, there was involved a notice of a special election authorizing the issuance of county bonds to aid in the building of the Vancouver Columbia river bridge. The alleged want of sufficient notice of the election is stated in the opinion as follows:

"The statute governing the giving of notice for special elections, held under the provision of the act under which the commissioners proceeded, provides that such notice must be given by publication in some newspaper having a general circulation in the county in which the election is proposed to be held 'for a period of at least four (4) weeks next preceding the date of the election.' In this instance the notice was directed to be given in two newspapers having a general circulation in Clark county. In one, the first publication of the notice was made on July 17, 1913, while in the other it was made on July 18, 1913, in each of which the notice was published weekly in four successive issues of the paper. Since the election was held on August 12, 1913, it will be observed that the first pub-

lication was made only twenty-six days prior to the election, and in the other only twenty-five days prior thereto.''

It further appears that there was a very large amount of unofficial publicity of the pending election given to the voters of Clark county. It was held that, in view of these facts, the notice was, in effect, a substantial compliance with the statute and the election held valid. The defects in the notice as to the time of its publication were slight as compared with that in question in this case.

In *Lee v. Bellingham School District No. 301,* 107 Wash. 482, 182 Pac. 580, the statutory notice requirement was held substantially complied with. The facts, reading from the opinion, were as follows:

"It appears that, on May 24, 1919, a special election was held in said school district for the purpose, among other things, of voting upon the proposition of the issuance of $75,000 of bonds to be used in providing certain betterments, and $75,000 of bonds to be used for refunding warrants of the district then outstanding. All of the proceedings leading up to the election are conceded to be regular, except the publication of the official notice of the election. The statute requires, Rem. Code, § 4667:

" 'Said notices shall also be published three times in two daily papers published in the district, and if there be no daily or dailies, then in the weekly paper or papers in three regular issues next preceding the day of such election.' [Rem. Comp. Stat., §§ 4942, 5031.]

"It is conceded that a notice, regular in form, was published on May 22 and May 23 in one daily paper, and on May 22, May 23 and May 24, in another daily paper published in said district; and the attack here is directed solely to this defective publication, which amounted in fact to two publications only in each paper, as the publication on May 24, being the day of the election, did not precede the day of the election.

"We have before us the findings of fact of the trial court, from which it appears that, on the 29th day of April, 1919, the board of directors adopted the resolution calling for the special election; that the printed notices of the election were duly posted at least twenty days previous to the day of election, . . ."

It further appears that there was a large measure of unofficial information spread among the people of the city relating to the pending election and its purpose. We note that the statute referred to in the opinion goes somewhat farther than the portion quoted therein. It has this additional requirement:

"Said notices shall be posted in at least one place in each ward in the district at least twenty days previous to the time of the election."

The opinion states that this was done, but inadvertently omits to show that it was a part of the official notice of the election. So, there was there involved only a failure of one day's official publication, the official posting being done as required by statute. Thus, it appears that the defect in official notice was there of much less moment than in this case. Referring to our previous decision touching the rule of substantial compliance, we there said:

"We do not wish in any manner to extend or broaden the rule referred to. The action of the officials of the district in failing to publish notice according to the letter of the statute cannot be commended, nor should others be encouraged to follow such a course. It clearly appears, however, from the findings of the court in this case, that the voters generally were fully advised of the date and purpose of the special election; that no one was denied the privilege of voting for want of notice; and that the result of such election would not have been different had the official notice been published strictly in accordance with the terms of the statute."

That is a unanimous *En Banc* decision.

In *State ex rel. Ferguson v. Superior Court,* 140 Wash. 636, 250 Pac. 66, there was drawn in question the duty of calling and giving notice of a special election, to be held at the same time as the county general election, to elect a judge of the superior court for King county to fill a vacancy in that office because of the resignation of its incumbent. The constitution and statute contemplates the holding of such an election at the same time as the county general election next following the creation of the vacancy. There was but eighteen days' time for the calling and giving of notice of the special election following the occurring of the vacancy. The statute required thirty days' notice of such election; so it was impossible for the notice requirement to be complied with to a greater extent than giving it for a period of seventeen or eighteen days. We held that the county auditor was not required to call such election because of the impossibility of substantially complying with the statutory notice requirement. So deciding, we said:

"It is true, as pointed out by counsel, this court has held in *Seymour v. Tacoma,* 6 Wash. 427, 33 Pac. 1059, and *Richards v. Klickitat County,* 13 Wash. 509, 43 Pac. 647, and perhaps in other cases, that mere irregularities in an election notice, even of a special election, will not necessarily invalidate the result of such an election; but no decision has come to our notice, and we think none can be found, holding that such an irregularity as would be caused by the giving of only seventeen or eighteen days' notice, when the minimum statutory period for giving a notice is thirty days, can be overlooked or such notice considered as a substantial compliance with the statutory notice requirements."

We have not overlooked the failure of the statutory requirement here in question, as to time of publishing the notice, to be accompanied in terms by a declaration that it is mandatory rather than directory.

The absence of such a declaration has induced many courts to carry the substantial compliance rule very far in upholding elections. However, we are of the opinion that such rule ought not to be carried to the extent of holding that unofficial publication and dissemination of information of an impending election can take the place of, and practically wholly dispense with, statutory official notice, even though such notice be in a measure directory rather than mandatory, by reason of the failure of the statute to expressly make it mandatory. We conclude that the slight degree of compliance with the statutory requirement as to time of the publication of the official election notice here in question, falls short of being a substantial compliance therewith, in the sense that it was, to that end, sufficiently aided by the unofficial publicity of the pending election; and that therefore the judgment of the trial court must be reversed and appellant Dunn awarded injunctive relief as prayed for by him.

After the trial of this case upon the merits, but before the rendering of judgment upon the merits, A. S. Kresky and other electors of the city filed a petition in substance asking that they be permitted to intervene in the action and make further showing to the trial court in support of their and Dunn's claim of invalidity of the election. This, upon due consideration, the court denied, evidently upon the assumption that the petitioners were not offering to present to the court anything of a substantial nature in addition to what was presented upon the trial in behalf of appellant, Dunn; and thereupon proceeded to make findings of fact, conclusions of law and render its final judgment of dismissal upon the merits. After the plaintiff, Dunn, had appealed, the petitioners Kresky and others appealed from the order of the court denying their petition to participate in the action. It seems

plain to us that Dunn having appealed, and his appeal being successful, accomplishing all that Kresky and his co-petitioners sought upon the merits, there is no longer any controversy in which they have any interest. We therefore dismiss their appeal.

██ Appellant Dunn shall recover against the city his costs incurred in prosecuting his appeal to this court. Appellants Kresky and his co-petitioners shall not recover any costs in prosecuting their appeal to this court. The city shall not recover any costs in this court against Kresky and his associates.

MAIN, FRENCH, and MILLARD, JJ., concur.

HOLCOMB, J. (dissenting)—There is nothing in our statutes, relating to such special election as is here involved, making such election void if the statutory requirements are not fully complied with.

I would not extend the rule to the extent that all formalities required by law may be ignored or dispensed with, but we have always followed the rule in this state that, where substantial notice was given and the voters were fully informed as to the date and place of holding a special election, there was such substantial compliance with the requirements for notice by causing publicity thereof to be given as to fully inform all voters thereof, and mere failure to comply with those statutory requirements as to notice will not invalidate such election. Even the cases cited in the prevailing opinion are not contrary to that rule.

Under the findings made by the trial court, there was much more substantial and ample publicity given to the special election in question than there was in some of the cases cited in the opinion. The fact that there were 3,725 eligible voters within Centralia, and that there were 2,298 voters voted at the special election for and against the proposition submitted to

them, that is, about two-thirds of the qualified voters voted, is ample proof that the voters were well informed of the date and place of the special election, aside from the other matters made in the findings and quoted in the opinion. The cases cited in the opinion to sustain it may all be distinguished upon the facts and conditions therein set forth. The decision in *Lee v. Bellingham School District No. 301,* 107 Wash. 482, 182 Pac. 580, is sufficient to sustain the proceedings in this special election.

I therefore dissent.