[No. 27895. Department Two. March 7, 1940.]

GEORGE I. SHAW, *Appellant*, v. W. S. SHUMWAY *et al.,
as Commissioners of Public Utility District No. 1
of Okanogan County, Respondents.*[1]

*Robt. J. Murray* and *R. E. Young*, for appellant.

*Houghton, Cluck & Coughlin,* for respondents.

BEALS, J.—December 11, 1935, there was filed with the auditor of Okanogan county a petition for the establishment of public utility district No. 1 of Okanogan county, with boundaries coextensive with the county, the petition having been signed by more than ten per cent of the qualified electors. The county auditor certified the petition as sufficient and transmitted the same to the board of county commissioners, which promptly certified the proposition to the county election board for submission to the voters at the next general election. October 17, 1936, the election board caused to be published a notice of general election, which included a statement that the proposition for creating the public utility district and for the election of three commission-

[1]Reported in 99 P. (2d) 938.

ers therefor would be voted on at the general election to be held November 3rd following. The county auditor posted notices of the election, the notices having been posted at various dates between October 5th and 9th, both inclusive.

The general election was held on the date specified, 5,922 electors voting for or against the proposition, 4,027 voting in favor, and 1,895 against. Messrs. Shumway, King and Giles were elected commissioners of the district, receiving 4,170, 3,783 and 3,629 votes, respectively. A total of 8,748 ballots were cast throughout the county at the general election. Three commissioners qualified and entered upon the performance of their duties, which they or their successors are still performing. Another commissioner in place of Mr. Giles was elected at an election held December 4, 1937, and Mr. King was reelected at a subsequent election held November 3, 1938.

January 3, 1939, George I. Shaw, plaintiff herein, alleging that he was a legal resident and taxpayer within the confines of the public utility district, and that he sued on his own behalf and on behalf of all other legal residents and taxpayers within the district, filed his complaint in this action, alleging the organization of the district; that the law required that the notice of election be posted in each polling place and in each election precinct not less than thirty days before the date of the election; and that the notice of election be published in a newspaper of general circulation thirty days prior to the date of the election. Plaintiff also alleged that, because the notice of election had not been posted and published for the time required by law, the purported election and establishment of the utility district were illegal, invalid, and void. Plaintiff further alleged that the defendant commissioners were about to levy a tax of one mill on the property of plaintiff

and all other taxpayers of Okanogan county, and that, because of the facts alleged, the tax was illegal and void. Plaintiff asked for a decree declaring the formation of the utility district invalid and a nullity, and that the defendant commissioners be permanently enjoined from proceeding further in connection therewith.

The defendants answered, admitting that no notice of the general election, other than those referred to in the complaint, were posted or published, alleging, however, that information concerning the coming election was conveyed to the electors generally in Okanogan county; that the matter of the proposed establishment of a utility district and the election of commissioners therefor was widely discussed throughout the county prior to the election; that, throughout that period, daily and weekly newspapers which circulated throughout the county, together with radio broadcasts, contained numerous and repeated references to the proposed creation of the utility district and the election of commissioners therefor; and that the election was matter of general knowledge among the voters of Okanogan county. Defendants further alleged that the electors of Okanogan county generally participated in the election, and that the vote cast represented a reliable expression of public opinion within the county upon the matter above referred to.

Plaintiff having replied, denying the affirmative allegations of the answer, the cause came on regularly for trial before the court, resulting in findings of fact and conclusions of law in favor of the defendants, followed by a decree dismissing the action with prejudice and declaring that public utility district No. 1 of Okanogan county was a municipal corporation duly organized, and that the defendants in the action were the duly elected, qualified, and acting commissioners thereof. From this decree, plaintiff has appealed, assigning

error upon the making of two findings of fact; upon the conclusions of law; and upon the entry of the decree dismissing the action.

Finding No. 6, of which appellant complains, reads as follows:

"That ever since the time that the petition for the establishment of the public utility district was filed with the auditor of Okanogan county up to the time of the election, on November 3, 1936, the questions of whether said public utility district should be created, and which, if any, commissioners thereof should be elected, were discussed widely among the electors of Okanogan county. During said time the daily and weekly newspapers which circulated throughout the county among the residents and electors thereof contained numerous and repeated references to the proposed creation of the proposed public utility district, and the election of the commissioners thereof. Said issues received very widespread publicity among the residents and electors of Okanogan county during all of said time, and the fact that the election on the proposition referred to and the election of the commissioners of the public utility district would be held on November 3, 1936, was a matter of general knowledge among the voters in Okanogan county."

By finding No. 8, the making of which appellant also assigns as error, the trial court, *inter alia,* found that

"The great body of the electors of Okanogan county participated in the election, with actual prior knowledge of the time and place of holding the election, and the vote cast at said election represents a reliable expression of public opinion within the county on the issues above referred to,"

concluding the finding by a statement of the numbers of votes cast for and against the formation of the district, and for the commissioners, all as hereinabove set forth. We do not understand that it is contended

by appellant that these figures are incorrectly stated in the finding.

As stated by appellant in his brief, the assignments of error generally involve the same question, and will be discussed together.

The general election laws of this state apply to public utility district elections, save that public utility district ballots shall be deposited in separate ballot boxes. Rem. Rev. Stat., §§ 11607 to 11609 [P. C. §§ 4498-13 to 4498-15]. Under the statute, notice of general elections shall be given by the appropriate election board

". . . by one publication in a newspaper of general circulation in the county, not less than thirty (30) days nor more than forty (40) days before the date of election, and by posting a copy of such notice at each polling place for such election not less than thirty (30) nor more than forty (40) days before the date of election," (Rem. Rev. Stat., § 5148-3 [P. C. § 2120-7c])

it being the duty of each county auditor to give at least thirty days notice of any general election, "by posting or causing to be posted up, at each place of holding election in the county, a written or printed notice thereof." Rem. Rev. Stat., § 5157. An election to determine whether or not a public utility district should be created shall be held at the time of the holding of a general election, and the same law controls the two classes of elections.

From the record in the case at bar, it appears beyond question that the proposition of establishing or rejecting a public utility district was thoroughly publicized throughout Okanogan county prior to the date of the election. The matter was discussed in the half dozen or more newspapers printed and circulated in the county, and in the "Wenatchee Daily World," which

circulates extensively in Okanogan county. The newspaper comment was both for and against, and at least two pamphlets concerning the election were circulated, to some extent at least, among the voters. Electors availing themselves of the privilege of exercising their franchise at the election in question voted for the president of the United States, as well as a governor of the state and other national and state officers. This action was commenced over two years after the election, and after two annual elections for choosing a commissioner for the district had been held.

We are convinced that the trial court's findings, of which appellant complains, are amply supported by the preponderance of the evidence.

██ In considering the conclusions to be drawn from such a state of facts, several of our decisions must be noted.

In the early case of *Seymour v. Tacoma*, 6 Wash. 427, 33 Pac. 1059, it was held that a municipal bond election was valid, although the notice of the election was posted twenty-six days prior to the date thereof, instead of thirty days, and was published less than the required number of times. In discussing the question to be determined, the court used the following language:

"Certain rules as to notice of elections have become well settled, and none of them are better settled than that the formalities of giving notice, although prescribed by statute, are directory merely, unless there is a declaration that unless the formalities are observed the election shall be void."

In the case of *State ex rel. Mullen v. Doherty*, 16 Wash. 382, 47 Pac. 958, 58 Am. St. 39, a city election called for the purpose of passing upon several proposed charter amendments, was held valid, in spite of the fact that the law requiring posting notice of the elec-

tion had not in all respects been complied with. It appeared that the special election was a matter of public notoriety throughout the city, and the same was held valid. The court cited and followed the case of *Seymour v. Tacoma, supra.*

In the case of *Rands v. Clarke County,* 79 Wash. 152, 139 Pac. 1090, an election involving the issuance of a county bond issue was held valid, although the notice of election was published less than thirty days prior to the election date. The court noted that the proposed election had been mentioned in daily and weekly newspapers circulating throughout the county, and that the matter was one of public notoriety. The court reaffirmed the rule laid down in the two cases above cited.

It was held, in the case of *Lee v. Bellingham School Dist. No. 301,* 107 Wash. 482, 182 Pac. 580, that a special school district election, called for the purpose of refunding bonds, was valid, although the publication of the notice of the election did not comply with the statute. The court again held that statutes requiring the giving of notices of an election are directory rather than mandatory.

In the case of *Groom v. Port of Bellingham,* 189 Wash. 445, 65 P. (2d) 1060, the validity of a port district election for the adoption or rejection of a plan of harbor improvement and the issuance of bonds therefor, was held valid, although the particular propositions above referred to were not mentioned in the notices of election.

Finally, in the recent case of *Vickers v. Schultz,* 195 Wash. 651, 81 P. (2d) 808, which involved the validity of a special election to consider the establishment of a public utility district, this court held the election valid, in spite of the failure of the county auditor to post notices of the special election in each polling place

within the county. In the course of the opinion, we said:

"We have consistently held that, unless the statute which prescribes the form and manner of publishing election notices, expressly provides that non-compliance with the statute will render the election void, it is regarded as declaratory rather than mandatory. The election will be held valid, even if there is a variance from the terms of the statute, if the election was a fair one; that is, if information concerning the election was communicated to the electors by means other than the official notices and if the electors generally participated in the election so that the election as held constituted a reliable expression of popular opinion."

The court also said:

"It may be added that the courts are more liberal in permitting a deviation from the statute where an attack is made after the election is held than where the attack is made prior to the election."

Appellant relies upon the case of *State ex rel. Ferguson v. Superior Court*, 140 Wash. 636, 250 Pac. 66, in which this court held that, upon the resignation of a judge of the superior court eighteen days prior to the next general election, there was not sufficient time for the giving of the statutory notice calling a special election to fill the vacancy. The matter was taken into court prior to the election, by an application for a writ of mandate requiring the auditor to give notice of an election to fill the vacancy, and was not an attack upon an election after the same had been held. The opinion in the case cited was considered by this court in deciding the case of *Vickers v. Schultz, supra,* and was there distinguished. Clearly, there is a difference between the entry of a judicial order requiring the calling of a special election to fill an unanticipated vacancy in an elective office, when there is not sufficient time before the date of the general election to

give the statutory notice, and the questions which were presented in the cases above cited.

Appellant also cites the case of *Dunn v. Centralia,* 153 Wash. 495, 280 Pac. 26, in which it was held that a special election which had been held, and at which the issuance and sale of special public utility bonds had been approved, was void, this court holding that the law requiring prior notice of the election had not been substantially complied with. This court, while recognizing the principle that statutes requiring the giving of official notice of elections are directory rather than mandatory, held that, upon the record before it, the election was invalid. It appeared that a notice of the coming election was printed in only one issue of the official daily newspaper of the city, and was not published in any other newspaper circulating within the city. The court noted that no other official notice of the election was given. The law required that

". . . ten days' notice of such election shall be given in the newspaper doing the city or town printing, by publication in each issue of said paper during said time. . . ." Rem. Rev. Stat., § 9489 [P. C. § 1215].

The notice, then, was printed only once, instead of ten times, as required by law. This was a more serious violation of law than is presented by the record in the case at bar. The court called attention to the fact that there was apparently no law providing for the posting of notices of the election, the only official notice to be given being the publication above referred to, and that consequently any notices which were posted were not any portion of the official notice of election required by law. It should also be noted that, in the *Centralia* case, the election was not held at the same time as any general state election, which elections are, of course, matter of general knowledge

and great interest, very largely participated in by the voters.

The vote cast on the matter of the proposed organization of the district demonstrates an adequate expression of the will of the electors.

We are of the opinion that this case is controlled by the case of *Vickers v. Schultz, supra,* and the cases therein cited.

The trial court drew correct conclusions of law from facts properly found.

The judgment appealed from is affirmed.

BLAKE, C. J., STEINERT, GERAGHTY, and JEFFERS, JJ., concur.