[No. 23142. Department One. August 24, 1931.]

W. H. HEMMI, *Appellant,* v. ALBERT H. JAMES, *Respondent.*[1]

[1] Reported in 2 P. (2d) 750.

R. W. Greene, for appellant.
Baldrey & Kenyon, for respondent.

Main, J.—In this proceeding, W. H. Hemmi and Albert H. James are rival claimants to the office of justice of the peace in Marietta township, in Whatcom county. January 13, 1931, the regular annual meeting and election of officers was held in that township. The notices posted for the meeting recited that it was to be held January 13, 1930, whereas they should have recited January 13, 1931. There were six notices posted at public places in the township which were the regular places for posting such notices.

The annual meeting and election was held January 13, 1931, and the minutes of the meeting and election show that two hundred twenty-two votes were cast. The attendance at the meeting and election was at least equal to the average attendance at such meetings. Hemmi was a candidate for justice of the peace for the township, and his name was on the printed ballot. Prior to the day of the town meeting, a caucus had been held, and candidates for the various offices had been nominated, of which Hemmi was one. James' name did not appear upon the ballot, but he ran in the

election as a sticker candidate, receiving one hundred fifty votes. Hemmi received fifty-five.

James was declared elected to the office of justice of the peace for the township, and Hemmi subsequently instituted this contest. The cause came on for trial before the superior court, and, at the conclusion of the evidence offered by Hemmi, a judgment dismissing the proceeding was entered, from which he appeals.

■ The first question is whether, under the constitution of this state, the legislature had the power to make the office of justice of the peace a township office and not a precinct office.

Section 1 of article IV of the constitution provides that the judicial power of the state shall be vested in the supreme court, superior courts, justices of the peace, and such inferior courts as the legislature may provide.

Section 10 of the same article provides that the legislature shall determine the number of justices of the peace to be elected in incorporated cities and towns and in precincts, and shall prescribe their powers, duties and jurisdiction.

Section 5 of article XI of the constitution provides that the legislature, by general and uniform laws, shall provide for the election in the several counties of boards of county commissioners, sheriffs, county clerks, treasurers, prosecuting attorneys "and other county, township, or precinct and district officers, as public convenience may require, and shall prescribe their duties and fix their term of office." In this section, the legislature is given power to provide for such officers in townships as public convenience may require. Reading this section in connection with section 10 of article IV, it seems clear that the constitution does not prohibit the legislature from making a justice

of the peace a township officer in counties where there is township organization for local self-government.

■ The next question is whether the legislature has, in fact, made the office of justice of the peace a township office in those counties where there is township organization.

In 1895, the legislature passed an act (Laws 1895, p. 472, chap. 175) entitled:

"AN ACT to provide for township organizations, and prescribing the duties and fixing the compensation of township officers, and providing for the assessment, levy and collection of town taxes."

That act appears in Remington's Compiled Statutes under title LXXX, "Townships." Section 11376 provides that there shall be elected at the annual town meeting in each town, one supervisor, one town clerk, one treasurer, and one assessor, and there shall be elected at the annual town meeting one justice of the peace and one constable. This section was subsequently amended in a manner which is not material to the present inquiry (Laws 1923, p. 15, chap. 13).

Section 11479 in part provides that:

"After townships have been organized, justices of the peace and constables shall not be elected at general elections, but at town meetings as herein provided."

Section 11411 provides that the supervisors constitute a town board, and if for any cause there are not three supervisors present to constitute the board, the justice of the peace of the township shall act as a member of the board.

From these sections, it appears that the legislature distinctly and definitely made the office of justice of the peace a township office where there was township organization, as is the case in Whatcom county. In § 11479, as indicated, it is expressly provided that justices of the peace shall not be elected at "general elec-

tions, but at town meetings." If they are to be elected at town meetings, it follows that they would be township officers and not precinct officers. The legislature has made the office of justice of the peace a township office in those counties where there is township organization.

The case of *State ex rel. Moody v. Cronin*, 5 Wash. 398, 31 Pac. 864, has no application to the present situation, because that case was decided long before the act which we are now considering was passed, and under an entirely different statute.

The next question is whether the title of the act of 1895 is sufficiently broad to include the office of justice of the peace. The title recites that the act is one to provide for township organizations and "prescribing the duties and fixing the compensation of township officers." In the body of the act, as already seen, a justice of the peace is made a township officer. There was no more necessity of naming in the title the office of justice of the peace than any other of the township officers. The act is comprehensive, and covers in detail township organization and government, and it would not be very inaccurate to say that it constitutes a code upon that subject. The title was obviously sufficient.

The cases of *Potter v. Whatcom County*, 138 Wash. 571, 245 Pac. 11, and *National Assn. of Creditors v. Brown*, 147 Wash. 1, 264 Pac. 1005, are different. In the former, the act of the legislature related to townships and amended certain sections of the statute, and contained no reference to counties, their duties or liabilities; yet in the body of the act there was a proviso which placed responsibility on the county for the cost of bridges in excess of three hundred dollars. In the second case, the title of the act used the word "venue,"

and it was held that this was not broad enough to cover "jurisdiction."

The next question is whether the election of James, on January 13, 1931, was legal and valid. As above stated, the notices through mistake stated the time as January 13, 1930, whereas they should have been January 13, 1931. It is said that they were not posted in the most public places in the township, as required by the statute; but they were posted in the usual and ordinary public places for such notices. The number attending the annual meeting and election was as great as the average. It is evident that the great body of the electors of the township had notice of the time and place of holding the town meeting and election; and, even though there was a defect in the date of the notice and the posting of the same was not in exact accord with the provisions of the statute, the election, nevertheless, was legal.

In *State ex rel. Mullen v. Doherty,* 16 Wash. 382, 47 Pac. 958, 58 Am. St. 39, it is said:

"The rule established by an almost unbroken current of authority is that the particular form and manner pointed out by the statute for giving notice is not essential, and where the great body of the electors have actual notice of the time and place of holding the election, and of the questions submitted, this is sufficient. The vital and essential question in all cases is whether the want of the statutory notice has resulted in depriving sufficient of the electors of the opportunity to exercise their franchise to change the result of the election. (Citing cases.)"

The next question is whether the election could be held after the adjournment of what is called the business meeting. The minutes show that, at the conclusion of the business meeting, a motion to adjourn was made and seconded, and that "the polls were declared open at 11:20 a. m." The minutes do not show

176

that the motion to adjourn was carried, but we will assume that such is the fact. For the purpose of conducting the election, an inspector, two judges and two clerks were named. Thereafter the election was held in a regular and orderly manner, and the polls were declared closed at eight o'clock p. m. It is said that the election of James is void because he was not elected before the adjournment of the business meeting, but we find this contention without substantial merit.

Sections 11382 *et seq.*, Rem. Comp. Stat., provide how township meetings shall be organized, how the business shall be transacted and how the election shall be held. The statutes provide that the meeting shall be organized by choosing a moderator, and the meeting shall proceed to transact the township business to be transacted by the electors at each township meeting. Section 11385 provides that,

"Before the electors proceed to elect any town officer, proclamation shall be made at the opening of the polls by the moderator, and proclamation shall, in like manner, be made of the adjournment, and the opening and closing of the polls, until the election is ended."

In the present case, the election was conducted in exactly the manner in which the previous elections had been conducted, and, in our opinion, was conducted substantially in accord with the statutory requirements.

Some other questions of minor importance are presented, but we have already discussed what appear to us to be all the essential and meritorious questions, and it does not appear to be necessary to further extend the discussion.

The judgment will be affirmed.

TOLMAN, C. J., PARKER, MITCHELL, and HOLCOMB, JJ., concur.