[No. 31463. Department Two. June 28, 1950.]

LEE F. DAVIES, *Appellant*, v. H. F. KRUEGER *et al.*, *Respondents*.[1]

*Hall & Cole* and *William M. Cummings*, for appellant.

*Lycette, Diamond & Sylvester*, for respondents.

SIMPSON, C. J.—Plaintiff instituted this action on his own behalf and on behalf of others similarly situated in King county water district No. 79 against defendants Krueger, Peterson and Millman in their capacity as commissioners, asking an injunction preventing them from selling certain general obligation bonds issued in accordance with a water district resolution. The cause, tried to the court; resulted in the entry of a decree denying the injunction.

The assignments of error challenge the correctness of the decree.

The undisputed facts are: October 5, 1949, the water district commission passed its resolution No. 18. The resolution

[1] Reported in 219 P. (2d) 969.

provided for the issuance of general obligation bonds of the district in the sum of sixty-five thousand dollars, and for water revenue bonds in the sum of six hundred twenty thousand dollars. It outlined a comprehensive scheme or plan of water supply, and arranged for a special election in the water district. The resolution was transmitted to the auditor of King county, who, through his deputy Edward J. Logan in charge of elections, gave notice of the special election to be held November 29, 1949, by publishing notices of the election in the Daily Journal of Commerce on the 15th and 22nd days of November, 1949, and by posting notices at each of the polling places within the district on November 22, 1949. The election resulted in the approval of the bonds by the required majority of the voters.

The original resolution did not provide for general obligation bonds without limitation as to tax levies, so on the 27th day of January, 1950, the board passed resolution No. 20, purporting to amend resolution No. 18 by providing that the general obligation bonds were to be paid by unlimited annual tax levies. This last resolution was certified to the auditor of King county, and was thereafter submitted for approval or rejection to the voters of the water district at a special election held March 14, 1950. Prior to this election, proper notice as required by both the general and special election laws of the state was given. The amendment was duly approved by the requisite number and majority of voters residing within the water district at the election held March 14, 1950.

A resumé of the unofficial information which the voters of the district acquired regarding the first election prior to the date it was held is expressed by the trial court in its finding No. VI, as follows:

"That actual notice of said special election to be held on the 29th day of November 1949, and the propositions to be voted thereon, was given to the electors of Water District No. 79, King County, Washington, for and during the period from approximately the 7th day of October 1949, continuously up to and including the day of the special election, to-wit, the 29th day of November, 1949, by means of notices

of the special election appearing in the Bothell Citizen, a weekly newspaper of general circulation throughout said Water District; that approximately 750 homes of the approximate 900 homes in said Water District, subscribe to the Bothell Citizen and that similar notices were given in the Kenmore Progress, a weekly newspaper of general circulation throughout the district, which is distributed free to every boxholder and mailing address in the said water district. That in addition to the notices of said special election appearing in news articles in each issue of said newspapers, there appeared in said newspapers lengthy news stories and articles explaining in detail the features of the comprehensive plan and the two bond issues to be voted on at said special election; that in one issue of the Kenmore Progress, to-wit, the issue circulated on the 24th day of November 1949, the entire Resolution No. 18, with the exception of the size of the water pipes and mains and the streets and roads on which they were to be installed, was printed word for word in detail. That paid ads were printed and published in several issues of said newspaper published during said period, advocating and urging the electors to vote for and against the propositions set forth in the Resolution No. 18 at said special election. That editorials were printed in several of the said newspapers aforesaid, explaining the features and benefits to be had by the adoption of the propositions set forth in Resolution No. 18. That notice of the date of said special election and the propositions to be voted thereon were announced and discussed at various community clubs, business clubs and social clubs and gatherings and meetings throughout the District between the dates of October 5th, 1949 and the 29th day of November 1949. That a Citizen's Committee urging the electors to vote at said special election was formed and said committee members and other volunteer workers made a house to house canvass, contacting every home within said Water District, explaining verbally the date of said special election to be held on November 29, 1949, and leaving pamphlets explaining the features of the comprehensive plan and bond issues as set forth in Resolution No. 18. That said canvass, or campaign, was conducted between the 6th and 16th day of November 1949. That 200 copies of Resolution No. 18, a ten page document, was distributed throughout the District between the 15th day of October and the 5th day of November, 1949; that said complete copies of Resolution No. 18 were available at practically all the business firms and stores

within said District and notices appeared in the aforementioned newspapers advising the public that said copies of Resolution No. 18 were available to anyone interested. That between 40 and 50 signs or placards, with large type print telling of said special election and the date thereof, were posted and displayed throughout said District between the 6th day of November 1949 and the 16th day of November 1949. That approximately one month before said special election and again approximately one week before said special election, a circular was sent to each boxholder and mailing address in the said District by the opponents of Resolution No. 18, calling attention to the voters of said District the date of said special election and urging the defeat of said propositions as set forth in Resolution No. 18. That a general mass meeting of the public was held on November 28, 1949 at a community clubhouse within the District; that notices of said mass meeting announcing that the propositions set forth in Resolution No. 18 would be discussed in detail appeared in the community newspapers aforementioned and handbills, giving notice of said mass meeting, were distributed throughout the District. That between 100 and 150 people attended said mass meeting at which time the special election and the propositions to be voted on were discussed in detail. That the date of said special election, November 29, 1949 and the issues to be voted on as set forth in Resolution No. 18, were a matter of general common knowledge throughout the said Water District for a period of at least six to seven weeks before and up to the said special election of November 29, 1949. That more publicity of said special election and more information concerning thereto was conveyed to the electors of Water District No. 79, King County, Washington, generally, for and against the measures to be voted on, than a strict compliance with the statutes would have afforded. That there was substantial compliance with the statutory notices and postings of said special election."

Appellant takes the position that the election held November 29, 1949, was invalid because of the failure to comply with Rem. Rev. Stat., § 5148-3 [P.P.C. § 522-19], which provides that notice of a special election must be given by publication and posting of a notice of the election not less than thirty nor more than forty days prior to the date of the election.

It is the rule in this state that the statutory requirement of giving official notice, even of a special election such as this, is in a measure directory in the sense that the requirement need only be substantially complied with where there is a large measure of general unofficial information concerning a coming election reaching the public through the newspapers, other printed circulated matter, and discussions at public gatherings.

It is our conclusion that the information given to the people of water district No. 79 of King county prior to the first election was sufficient to give all the people in the district definite information of the time and place of the election and the question upon which they were to vote.

It appears in *Vickers v. Schultz*, 195 Wash. 651, 81 P. (2d) 808, that the county auditor failed to post notices of the special election for the formation of a public utility district. The trial court held that, while the statute had not been strictly complied with, there was sufficient knowledge given to the voters of the district by public meetings and newspaper articles which cured the defect and required a holding that the election was valid. In reviewing the case, this court cited a number of cases and then stated:

"We have consistently held that, unless the statute which prescribes the form and manner of publishing election notices, expressly provides that non-compliance with the statute will render the election void, it is regarded as declaratory rather than mandatory. The election will be held valid, even if there is a variance from the terms of the statute, if the election was a fair one; that is, if information concerning the election was communicated to the electors by means other than the official notices and if the electors generally participated in the election so that the election as held constituted a reliable expression of popular opinion."

The court further observed:

"It may be added that the courts are more liberal in permitting a deviation from the statute where an attack is made after the election is held than where the attack is made prior to the election."

The case of *Shaw v. Shumway*, 3 Wn. (2d) 112, 99 P. (2d) 938, is in point. It concerns the validity of an election held

to form a public utility district in Okanogan county. In that case it appeared that the election board failed to post and publish notices of an election to establish a public utility district for the time required by Rem. Rev. Stat., § 5184-3. In considering the case, this court pointed out that during the campaign prior to the election a great deal of information was given through the newspapers and by public hearings and the radio. After reciting these things, the court said:

"From the record in the case at bar, it appears beyond question that the proposition of establishing or rejecting a public utility district was thoroughly publicized throughout Okanogan county prior to the date of the election."

In so holding, we decided that the case was controlled by *Vickers v. Schultz, supra.*

Appellant in this case depends very largely upon *Dunn v. Centralia*, 153 Wash. 495, 280 Pac. 26, and contends that this case must be controlled by the last cited case. There is much merit in this contention. However, a reading of our opinions handed down since the decision in that case reveals that this court has departed very largely from the rule laid down there, so that it is no longer of much force in considering the election cases where the officials have failed or neglected to perform some act which has to do with the calling of an election, or the giving of notice thereof.

It is our opinion that this case is controlled by the cases of *Vickers v. Schultz* and *Shaw v. Shumway, supra.*

The judgment of the trial court was correct and is therefore affirmed.

ROBINSON, MALLERY, HILL, and HAMLEY, JJ., concur.