[No. 39588.    Department Two.    September 21, 1967.]
LYLE R. LONG et al., *Appellants*, v. THE CITY OF OLYMPIA
*et al., Respondents.**

*John R. Kramer, J. L. Coniff,* and *Argal D. Oberquell,* for appellants.

*Ernest L. Meyer* and *Harold R. Koch,* for respondents.

*Reported in 431 P.2d 729.

LANGENBACH, J.†—Appellants instituted this action to restrain the respondents from certifying the results of an annexation election. The city of Lacey was later permitted to intervene as a party-plaintiff. A hearing on the temporary restraining order had been set for February 14, 1967. After a 2-day trial the issue was submitted to the court which rendered a decision in favor of respondents on February 28, 1967. The restraining order was dissolved and respondents certified the election results. Ten days later the appeal was taken and perfected.

The city of Lacey was incorporated in November 1966. In December 1966, a petition was presented to the city commission of Olympia, proposing that there be annexed to that city a part of the city of Lacey. The petition having been found to contain a sufficient number of valid signatures, the city commission adopted a resolution directing the county auditor to proceed with an annexation election as provided in RCW 35.12.010.

The auditor set the election for January 24, 1967, inasmuch as a school revenue election was being held on that date. Notices were published and polling places chosen. As a matter of economy, the auditor consolidated several election precincts for the purpose of this election.

After the election the votes within the city of Olympia and the votes within the territory proposed for annexation were separately canvassed. It was found that approximately two-thirds of the electors in the territory proposed for annexation had expressed their choice. A majority of voters, both within the city and within the territory proposed for annexation, voted for annexation.

Before these votes could be certified, this action was commenced to prevent certification. A temporary restraining order was entered, returnable February 14, 1967. The parties submitted evidence, exhibits and extensive briefs.

---

†Judge Langenbach is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

The court upheld respondents' contentions and denied appellants any relief.

The trial court suggested that each party submit its proposed findings of fact, conclusions of law and order before March 1, 1967. Hearing was set for February 28, 1967. On that date, findings of fact, conclusions of law and an order dismissing the proceedings were entered. Appellants did not file a notice of appeal until March 10, 1967. In the meantime, it was disclosed, the election returns were certified and the annexation was thus completed.

By reason of appellants' failure to stay further action, in either the superior court or the Supreme Court, respondents argued that they were free to proceed with certifications and that the matter is now moot. Whether the proceeding is moot is a serious question. It is not essential, however, to a determination of this proceeding that the question of mootness be resolved. Until such decision is required in a proper case, the question will be reserved.

Appellants contended that the legal description of the Lacey territory proposed for annexation was fatally defective in three respects. By this contention appellants raised the question of whether, given this description, "a competent surveyor, either with or without the aid of extrinsic evidence, [could] . . . ascertain the property in question . . . ." *McAlmond v. Bremerton,* 60 Wn.2d 383, 384, 374 P.2d 181 (1962). The trial court found "that competent surveyors can adequately locate the property . . . ." Based on this finding, the court concluded that the legal description "was sufficiently definite under the law." To this finding and conclusion appellants assigned error. The record reveals there was substantial evidence supporting the trial court's finding that competent surveyors could adequately locate the property. While the engineering and surveying witnesses for both parties agreed that certain assumptions had to be made to locate the boundaries, they considered such assumptions reasonable.

■ Appellants also argued that this was a case of so-called "corridor annexation," forbidden in some jurisdic-

tions. An example of such annexation is given in *State ex rel. Danielson v. Village of Mound*, 234 Minn. 531, 48 N.W.2d 855 (1951), where the annexing village annexed a railroad right-of-way which proceeded away from its boundary. It then used this 5/8th-mile finger of land as a corridor along which to travel and at the end of which to branch out and envelop the annexed area. We do not have such a case. Here, the annexed area firmly abuts the boundary of Olympia. The corridor of which appellants speak, refers to the fact that the annexed area is very roughly shaped like an hour glass. It is true that the stem of that "hour glass" is a railroad right-of-way, but the bottom of the glass abuts the boundary of Olympia and the top, too, substantially abuts, being separated from Olympia by only the 60-foot width of a county road. This peculiar shape resulted because there lies at one point between Olympia and Lacey an "island" of land over which neither seeks jurisdiction. We agree with the trial court's finding and conclusion that the area proposed for annexation was contiguous to Olympia.

█ The county auditor set January 24, 1967, as the date of the annexation election for reasons of economy and convenience, that being the date of a special school election. Such special annexation election is governed by RCW 35.12.010 and not by RCW 29.13.020 as argued by appellant. RCW 29.13.020 treats of "city, town or district" special elections and provides that "emergency" is a condition precedent to their being held at a time other than that set for general elections. RCW 35.12.010, on the other hand, deals with special elections covering a municipal corporation *plus* "the territory proposed . . . to be annexed." Emergency is not a prerequisite to such a special annexation election. The statute requires that:

> The council or other legislative body of such corporation shall, *upon receiving a petition therefor, . . . cause to be submitted* to the electors of such corporation, and to the electors residing in the territory proposed by such petition to be annexed to such corporation, the question whether such territory shall be annexed to such corpora-

tion and become a part thereof. *Such question shall be submitted at a special election to be held for that purpose . . . .* (Italics ours.)

The evidence supports the trial court's finding that in setting the annexation election for January 24, 1967, the county auditor did not abuse his discretion. Likewise, the court properly found no abuse of discretion in the auditor's selection of polling places other than regular polling places. The general election law allows polling places to be located a reasonable distance outside the respective precincts and permits combining, uniting or dividing precincts. The wisdom of such legislation is shown in this case where one precinct contained only seven eligible voters.

■ Appellants' next contention is that the county auditor failed to provide the required legal notice of the annexation election. RCW 35.12.010 requires that notice be given a period of 4 weeks prior to the date of election. Four weeks prior to the election in issue was December 27, 1966. However, the first publication was had on December 29, 1966. On the 2-day difference appellants base their argument that the election is invalid. In *Vickers v. Schultz,* 195 Wash. 651, 657, 81 P.2d 808 (1938), we stated that:

> We have consistently held that, unless the statute which prescribes the form and manner of publishing election notices, expressly provides that non-compliance with the statute will render the election void, it is regarded as declaratory rather than mandatory. The election will be held valid, even if there is a variance from the terms of the statute, if the election was a fair one; that is, if information concerning the election was communicated to the electors by means other than the official notices and if the electors generally participated in the election so that the election as held constituted a reliable expression of popular opinion.

In that case, which tested the validity of P.U.D. #2 of Pacific County, the county auditor posted notices in only three public places at the county seat instead of in each precinct in the county. Much publicity, however, was given the election in newspapers and circulars, and numerous public meetings were held.

In the instant case, the proof showed that, in addition to the official published notices, much publicity occurred through radio and news accounts, and that handbills and literature were distributed among the electors. Thus, as we said in *Davies v. Krueger*, 36 Wn.2d 649, 653, 219 P.2d 969 (1950):

> It is the rule in this state that the statutory requirement of giving official notice, even of a special election such as this, is in a measure directory in the sense that the requirement need only be substantially complied with where there is a large measure of general unofficial information concerning a coming election reaching the public through the newspapers, other printed circulated matter, and discussions at public gatherings.

Under the circumstances, the fact that publication was first had on the 29th and not on the 27th of December does not cause the election to be invalid. We have considered the several arguments of appellants against the notice given and find them without merit.

■ Finally, appellants challenge the constitutionality of the statute upon which the annexation proceedings are based. RCW 35.12.010 is a special statute which provides for the annexation of new territory by a municipal corporation. It provides that the legislative body of such a corporation shall, upon being petitioned by at least one-fifth of its electors, submit to the electors of such corporation and to the electors residing in the territory proposed for annexation, the question of whether the territory shall be annexed. The statute requires that the question shall be submitted at a special election and provides special requirements for notice in addition to those required in RCW 29.27. The votes cast in the territory proposed for annexation are canvassed separately, and if a majority in that territory and a majority in the corporation favor annexation, a certified abstract of the vote is filed with the Secretary of State, upon which filing the annexation is deemed complete.

Appellants argue that the statute "fails to provide a procedural mechanism by which public notice and a public

hearing can be held concerning the establishment of the boundaries of an area proposed to be annexed." Their position is that without public notice and hearing on the question of drawing the boundary lines, those lines may be drawn so as adversely to affect the interests of property owners in the annexed area.

The *proposed* boundaries are, of course, drawn and submitted upon the petition of at least one-fifth of the qualified electors of the municipal corporation. But this *proposal* affects no one's property interests. RCW 35.12.010 provides in detail for both the notice which must be given of this proposal and the special election which must be held to give the electors of the affected territories an opportunity to cast their ballots and thereby be heard on the issue. The proceedings are analogous to those required in the submission of an initiative petition. When the proper officials determine the petition to be legally sufficient, the matter proceeds to a vote and it is open to the objecting elector to express himself thereafter at the election held to adopt or reject the proposal.

At the conclusion of this case, the trial court stated in its memorandum opinion:

> The foregoing objections to the pre-election and election proceedings fall into two groups. The first is the constitutional question of whether current statutory provisions setting forth annexation procedures protect the "annexees" from unlawful taking of their "property rights", and the second is the matter of whether the authorities performed their duties in compliance with such statutory provisions.
>
> . . . This Court will not go behind the legislative process which developed the annexation procedure, to supplant RCW 35.12 with the political controls which plaintiffs and Intervenor obviously seek. The fact that, as plaintiffs candidly state, the statutes fail to provide for open public meetings preliminary to the filing of a petition for annexation, is within the clear purview of legislative responsibility. The legislature, on the other hand, has most properly met its responsibility to protect against a surprise "grab" of civic control (which plaintiffs denominate as "property" rights) by providing

means for a major body of the electorate to place a measure on the ballot and give notice of election through the same procedures that govern elections of equal, if not greater, constitutional import.

The legislature saw fit to permit persons to organize without notice; made the annexing city government an active part of the annexation programming machinery; and gave the annexing body the authority to "submit" . . . "the questions to the electors" . . . That such city government failed to give special and unprovided-for notoriety; helped describe the boundaries and print special notices; and chose the economic and usual route of delegating authority to the County Auditor are laudatory acts of compliance with legislative intent and administrative economy which do not appear tainted with either constitutional violation or abuse of discretion.

The judgment is affirmed.

FINLEY, C. J., ROSELLINI, HUNTER, and NEILL, JJ., concur.