IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

IN RE: FEBRUARY 14, 2017, SPECIAL ) 
ELECTION ON MOSES LAKE ) No. 35174-2-III
SCHOOL DISTRICT #161 )
PROPOSITION 1 )
)
FRED MEISE, DOUG BIERMAN, PAT )
HOCHSTATTER, MIKE COUNSELL, )
JASON MELCHER, AND JARED POPE, )
)
              Appellants, )
)
    v. ) PUBLISHED OPINION
)
MICHELLE JADERLUND, GRANT )
COUNTY AUDITOR, )
)
              Respondent. )
)
KATIE PHIPPS, MICHELLE )
KITTRELL, KRISTA HAMILTON, )
SUSAN MOBERG, CRAIG HARDER, )
DENNIS KEARNS, and BARBARA )
KEARNS, )
)
        Respondent Intervenors. )

FEARING, C.J. — RCW 29A.60.165 directs the county auditor to mail notice to voters who fail to sign ballot envelopes or whose signatures do not match signatures on file with the auditor. The mailed notice gives the voter additional time to sign the ballot declaration or to provide a new signature to the auditor. The same Washington statute

directs the county auditor to telephone such voters if they do not respond to mailed notice. At the conclusion of a Moses Lake School District bond election, Grant County Auditor Michelle Jaderlund mailed notice to such defective signature voters but did not call voters who failed to respond to the mailing. The petitioners, six Moses Lake School District voters, ask us to invalidate the election. Based on the distinction between directory and mandatory duties, the doctrine of substantial compliance, and other election challenge principles, we deny the request and affirm the superior court's dismissal of this election challenge.

FACTS

On February 14, 2017, Moses Lake School District held a special election that sought approval of a $135 million bond measure. The bonds intended to raise funds for a new elementary school and new high school. We do not know the publicity given to the election in the Moses Lake vicinity. We do not know if the Valentine's Day ballot contained any candidate races or other measure elections.

One hundred twenty-six ballots submitted for the bond measure contained either a mismatched signature or no signature. A mismatched signature occurs when the Grant County auditor determines the signature on the ballot envelope looks dissimilar to the voter's signature on file with the auditor's elections division. Pursuant to law, Grant County Auditor Michele Jaderlund mailed a letter and a correction form to each voter who failed to sign the ballot envelope. The letter requested that the voter sign the form so

2

that election authorities could include his or her vote in the election's tally. The Grant County auditor also mailed a letter to voters with mismatched signatures, which letter directed the voter to journey to the auditor's office to update his or her signature so that election officials would include his or her vote in the bond measure's count.

Ninety-five residents rectified their ballot signatures and the Grant County auditor included their votes when tabulating results in the Moses Lake School District bond election. Thirty-one voters did not respond to Michele Jaderlund's letters. The record does not indicate that the postal service returned any of the auditor's letters as undeliverable. The auditor did not attempt to make telephone contact with the thirty-one voters who failed to cure their ballots. Of the thirty-one voters, twenty-four had telephone numbers on file with the auditor. We will refer to these twenty-four electors as the "uncalled voters" throughout the opinion.

The Moses Lake School District bond measure required a sixty percent vote for passage. 5,678 votes favored the bond measure and 3,781 votes opposed the measure. Under this count, a supermajority of 60.03 percent voted in favor, with the measure passing by two votes. Obviously, the uncalled voters could have changed the outcome.

On February 24, 2017, the Grant County auditor certified the ballot outcome. Also on February 24, the Grant County Canvassing Board certified the passage of the measure. During the February 24 canvass, the canvassing board rejected all thirty-one ballots, for which the auditor received no response from her letter.

3

PROCEDURE

On March 8, 2017, six registered voters filed this election contest petition in superior court. The petitioners claim that Grant County Auditor Michele Jaderlund engaged in misconduct by having failed to telephone the twenty-four voters as directed by Washington statute. The petitioners seek annulment of the Moses Lake School District bond measure election. Each petitioner signed and filed an affidavit, with the petition, that informed the court of the basis for the election contest and declared him or her to be a registered voter within the Moses Lake School District.

On March 9, the Grant County Canvassing Board conducted a mandatory recount because of the closeness of the vote. The recount did not change the result, and, on March 10, the canvassing board certified the outcome a second time. The board did not seek corrected votes from the thirty-one voters whose ballots the auditor did not count.

The record does not reflect how the thirty-one voters, whose votes the Grant County auditor did not count, had voted or would have voted. The parties stipulated that contacting the thirty-one voters during the course of this litigation would be inappropriate and that the thirty-one rejected ballots could no longer be counted or opened. The parties also stipulated that the superior court should not speculate as to how the uncalled voters would vote.

Grant County Auditor Michele Jaderlund filed a motion to dismiss the six voters' election contest petition. Thereafter, the court allowed seven registered voters to

intervene in support of the auditor's motion. The intervenors then sought to dismiss the petition as untimely filed. The trial court ruled that the petitioners timely filed their petition, but ruled in favor of the Grant County auditor on the merits. We agree with both of the trial court's rulings.

LAW AND ANALYSIS

Statute of Limitations

On appeal, Grant County Auditor Michele Jaderlund and the intervenors renew the argument that petitioners untimely filed the election contest petition. A statute demands that an election contest be filed within ten days of the election's certification. The auditor and the intervenors contend that the ten-day period commenced on February 24, when the Grant County Canvassing Board first certified the passage of the measure, rather than March 10, when the canvassing board recertified the outcome. The petitioners filed their challenge on March 8. We disagree and hold that petitioners timely filed the petition.

RCW 29A.68.020 permits a registered voter to challenge in superior court the certification of the result of an election on any measure. The statute directs, in part:

> All election contests must proceed under RCW 29A.68.011 or 29A.68.013.

In turn, RCW 29A.68.013 declares, in part:

> An affidavit of an elector under this subsection shall be filed with the appropriate court no later than ten days following the official certification of the primary or election . . . *or, in the case of a recount, ten*

> *days after the official certification of the amended abstract* as provided in RCW 29A.64.061.

(Emphasis added.) Note that the statute refers to the affidavit signed by the elector challenger rather than a petition as ending the running of the ten days. Language throughout chapter 29A.68 RCW hints that only an affidavit need be filed, and no petition is necessary to initiate an election challenge. RCW 29A.68.011, .013, .020, .030, and .040.

The Grant County auditor and the intervenors assert that the February 24 date controls the timeliness of the suit because the petitioners challenge the original certification, not the recount. They note that Washington law requires a recount of only those ballots actually tabulated in the initial count. *In re Election Contest Filed by Coday*, 156 Wn.2d 485, 489, 130 P.3d 809 (2006); *McDonald v. Reed*, 153 Wn.2d 201, 103 P.3d 722 (2004). Also, a voter may not cure a missing or mismatched signature for purposes of counting the ballot in a recount. RCW 29A.60.165(3). Therefore, the conduct of Grant County Auditor Michele Jaderlund, challenged by the petitioners, occurred by the time of the original canvassing board certification and the recount lacks relevance to the challenge. The challengers do not challenge the recount process. The board first certified the results on February 24, and the challengers filed the petition on March 8, twelve days later.

We generally give effect to a statute's plain meaning. *State v. Ervin*, 169 Wn.2d 815, 820, 239 P.3d 354 (2010). RCW 29A.68.013 does not qualify the language that the affidavit must be filed within ten days of the recount. The statute does not direct the challenger to file the affidavit, regardless of a recount, within ten days of the first certification of the election if the petitioner only challenges conduct of an election official occurring before the first certification and only relevant to the first certification.

Sound reason lies behind always allowing the petitioner to file the affidavit within ten days of the recount regardless of the nature of the challenge. The recount could change the result of the election and moot any challenge even if the challenge concerns conduct before the original certification. We note that petitioners filed their affidavits on March 8, two days before the recount, which date of filing clashes with waiting until recount results. Nevertheless, our analysis remains the same. RCW 29A.68.013 does not disregard early filing. Petitioners timely filed their affidavits.

Election Irregularity

We now reach the merits of petitioners' challenge. Grant County Auditor Michelle Jaderlund received, as part of the Moses Lake School District bond measure, unsigned ballot envelopes and signed envelopes that failed to match the signatures of the voters in the auditor's register. RCW 29A.60.165 imposes obligations on the auditor on receiving such flawed ballots. RCW 29A.60.165(1) prescribes:

7

> If the voter neglects to sign the ballot declaration, the auditor shall notify the voter by first-class mail and advise the voter of the correct procedures for completing the unsigned declaration. If the ballot is received within three business days of the final meeting of the canvassing board, or the voter has been notified by first-class mail and has not responded at least three business days before the final meeting of the canvassing board, then the auditor *shall* attempt to notify the voter by telephone, using the voter registration record information.

(Emphasis added.) In turn, RCW 29A.60.165(2)(a) demands:

> If the handwriting of the signature on a ballot declaration is not the same as the handwriting of the signature on the registration file, the auditor shall notify the voter by first-class mail, enclosing a copy of the declaration, and advise the voter of the correct procedures for updating his or her signature on the voter registration file. If the ballot is received within three business days of the final meeting of the canvassing board, or the voter has been notified by first-class mail and has not responded at least three business days before the final meeting of the canvassing board, then the auditor *shall* attempt to notify the voter by telephone, using the voter registration record information.

(Emphasis added.) Note that RCW 29A.60.165 mandates that the county auditor, when receiving either a mismatched or missing signature, must call the voter if the voter does not timely respond to notice by mail. The parties in our appeal agree that Grant County Auditor Michelle Jaderlund failed to make the phone calls despite having the phone numbers of twenty-four Moses Lake School District voters who failed to respond to the mailed notice of a flawed ballot signature.

RCW 29A.60.165 inserts the verb "shall" before the obligation to call, which word is presumptively imperative and operates to create a duty, rather than to confer discretion. *In re Parental Rights to K.J.B.*, 187 Wn.2d 592, 601, 387 P.3d 1072 (2017).

8

Nevertheless, RCW 29A.60.165 does not expressly void the election if the auditor neglects one of her duties. RCW 29A.60.165 specifies no remedy to impose if the auditor omits the phone calls.

Petitioners claim that the Grant County auditor's failure to telephone voters constitutes misconduct. RCW 29A.68.020 declares:

> Any of the following causes may be asserted by a registered voter . . . to challenge certification of the result of an election on any measure:
> (1) For *misconduct* on the part of any election officer involved therein.

(Emphasis added.) Michelle Jaderlund requests that we not focus on whether her neglect constituted misconduct. Therefore, we assume, without deciding, that her neglect of duty comprised "misconduct" for purposes of RCW 29A.68.020. No cases construe what constitutes "misconduct" for purposes of the statute.

Although RCW 29A.68.020 permits the bringing of a challenge on grounds of misconduct, the statute fails to expressly identify a basis on which the challenge will be successful. The statute may imply a successful challenge and the overturning of a vote on the showing of an election officer's misconduct. Case law, however, imposes restrictions on the ability to overturn election results.

Petitioners contend that RCW 29A.68.050 demands annulment of the vote if the auditor engages in misconduct. RCW 29A.68.050 describes the hearing for an election contest and reads, in part:

9

> The court shall meet at the time and place designated to determine such contested election by the rules of law and evidence governing the determination of questions of law and fact, so far as the same may be applicable, and may dismiss the proceedings if the statement of the cause or causes of contest is insufficient, or for want of prosecution. After hearing the proofs and allegations of the parties, the court shall pronounce judgment in the premises, either confirming or annulling and setting aside such election, according to the law and right of the case.

We disagree that the statute demands voiding of the vote solely on proof of misconduct. The "law and right of the case" dictates a more extensive analysis.

Many Washington judicial decisions, particularly older dense decisions, address challenges to elections on the basis of election irregularities. The Washington Supreme Court has announced at least four nonexclusive principles, tests, or standards to apply when determining whether to overturn an election based on an irregularity. First, the court will affirm an election if the election officer violated a directory, rather than a mandatory, duty. Second, the court will not interfere in an election if the election officer substantially complied with a statutory duty. Third, the court will uphold an election unless the challenger can show that the irregularity likely led to a different result in the election. Fourth, and perhaps related to principle three, the court will validate an election, despite a variance from the terms of the statute, if the election was fair and sufficient electors participated in the election so that the election, as held, constituted a reliable expression of popular opinion. Sometimes, a court applies more than one standard in a decision. Nevertheless, the differing standards could lead to contrary

10

outcomes in the same case.

We are unable to synthesize the four tests of election invalidity so we address each test separately. We invite our Supreme Court to integrate the standards into a unifying principle. We append to our opinion a list of Washington election decisions in which a voter challenges an election result because of an irregularity in the election process.

We first discuss mandatory versus directory duties with regard to election notice statutes. Washington follows the settled rule that the formalities of giving notice, although prescribed by statute, are merely directory, unless the statute declares that ignoring the formalities voids the election. *School Dist. 81 v. Taxpayers*, 37 Wn.2d 669, 671, 225 P.2d 1063 (1950); *Long v. City of Olympia*, 72 Wn.2d 85, 90, 431 P.2d 729 (1967); *Shaw v. Shumway*, 3 Wn.2d 112, 119, 99 P.2d 938 (1940); *Loop v. McCracken*, 151 Wash. 19, 27, 274 P. 793 (1929); *Rands v. Clarke County*, 79 Wash. 152, 159, 139 P. 1090 (1914); *Murphy v. City of Spokane*, 64 Wash. 681, 684-85, 117 P. 476 (1911); *State v. Doherty*, 16 Wash. 382, 389, 47 P. 958 (1897); *Seymour v. City of Tacoma*, 6 Wn. 427, 431, 33 P. 1059 (1893). Stated differently, courts adjudge statutory provisions relating to the conduct of an election, such as notice requirements, to be directory only and, even though not followed precisely, will not render an election void. *Dumas v. Gagner*, 137 Wn.2d 268, 283, 971 P.2d 17 (1999). The rule established by an almost unbroken current of authority is that the particular form and manner established by the statute for giving notice is not essential. *State ex rel. Mullen v. Doherty*, 16 Wash. 382, 389, 47 P. 958

(1897). In this regard, Washington follows the majority, if not universal rule.

26 AM. JUR. 2D *Elections* § 300 (2004); *Town of Coloma v. Eaves*, 92 U.S. 484, 487, 23

L. Ed. 579 (1875).

The test for determining whether a statutory duty is mandatory or directory is whether the statute declares the election to be void if the election official breaches the specified duty. Unless the statute, which prescribes the form and manner of publishing election notices, expressly provides that noncompliance with the statute renders the election void, the court regards the statutory obligation as discretionary rather than mandatory. *Davies v. Krueger*, 36 Wn.2d 649, 653, 219 P.2d 969 (1950). "'The formalities of giving notice, although prescribed by statute, are directory merely, unless there is a declaration that, unless the formalities are observed the election shall be void.'" *State ex rel. Mullen v. Doherty*, 16 Wash. at 389 (internal quotations omitted) (quoting *Seymour v. City of Tacoma*, 6 Wash. 427, 431, 33 P. 1059 (1893)).

Two Washington statutes declare ballot votes void, but not the entire election, under certain circumstances. RCW 29A.40.050(4); RCW 29A.56.040(4). We find no Washington election statute that demands annulment of an election because of an election irregularity and no Washington opinion that declares a statutory notice requirement mandatory.

RCW 29A.60.165 does not void the election if the county auditor fails to make phone calls after sending notice by mail of the missing or flawed signature of the voter.

12

For this reason, the Moses Lake School District bond measure should be affirmed.

We next discuss the substantial compliance rule. Officials must substantially comply with the requirements of the law. *Seymour v. City of Tacoma*, 6 Wash. at 432 (1893). Directory statutes calling for the publication of election notices will be considered to have been substantially complied with when an attempt has been made to comply with the statute. *School Dist. No. 81 v. Taxpayers*, 37 Wn.2d at 671-72. The Supreme Court wrote in *Davis v. Gibbs*, 39 Wn.2d 481, 485, 236 P.2d 545 (1951):

> In all cases where we have approved the doctrine of substantial compliance, that which was done, although irregular or deficient, *tended* to accomplish that which would have been accomplished had the statute been followed specifically.

Literal compliance of election laws is not essential. *Hesseltine v. Town of Wilbur*, 29 Wash. 407, 410-11, 69 P. 1094 (1902).

Washington courts have applied the term "substantial compliance" in numerous circumstances. Washington law defines "substantial compliance" as actual compliance in respect to the substance essential to every reasonable objective of a statute. *Crosby v. Spokane County*, 137 Wn.2d 296, 301, 971 P.2d 32 (1999); *Continental Sports Corp. v. Department of Labor & Industries*, 128 Wn.2d 594, 602, 910 P.2d 1284 (1996); *City of Seattle v. Public Employment Relations Commission*, 116 Wn.2d 923, 928, 809 P.2d 1377 (1991). The key to substantial compliance is the satisfaction of the substance essential to the purpose of the statute. *Crosby v. Spokane County*, 137 Wn.2d at 302. The purpose

13

for which the legislature adopts election notice statutes is to impart actual knowledge of the election to the voter. *State ex rel. Mullen v. Doherty*, 16 Wash. 382, 390 (1897).

Petitioners assert that Grant County Auditor Michelle Jaderlund did not substantially comply with RCW 29A.60.165 because of her failure to attempt phone contact with the uncalled voters. Petitioners isolate the duty to call as one duty and posit that the failure to attempt a call is no compliance at all.

Some rules and principles assist petitioners. In order for the doctrine of substantial compliance to apply, the actor must have affected some "actual" compliance with the relevant statute, because substantial compliance means "actual compliance" with the "substance" of a statutory requirement. *San Juan Fidalgo Holding Co. v. Skagit County*, 87 Wn. App. 703, 711, 943 P.2d 341 (1997). Noncompliance with a statutory mandate is not "substantial compliance." *Spokane County v. Utilities & Transportation Commission*, 47 Wn. App. 827, 831, 737 P.2d 1022 (1987). Substantial compliance demands some attempt to comply with the statute. *Davis v. Gibbs*, 39 Wn.2d at 485.

Grant County Auditor Michelle Jaderlund held two duties under RCW 29A.60.165: to mail the voter and to call the voter, if mail did not succeed in rectifying the signature irregularity. The petitioners astutely argue that the auditor completely defaulted on a duty and substantial compliance was not met because the auditor took no action, let alone substantial steps, to comply with the duty to phone voters with mismatched or missing signatures.

14

We conclude that we must consider RCW 29A.60.165 as a whole rather than isolating individual duties under the statute. The statute seeks to bestow notice to the voter of a signature irregularity. The Grant County auditor complied with that purpose by sending a notice in the mail. The auditor received no return envelopes. Thus, all uncalled voters received actual notice of the defect and the need to perform some act in order to validate their vote. We question whether the auditor would reach most of the uncalled voters by phone and whether phone notice would prompt the voter to timely correct the error when mail notice did not prompt the correction.

Petitioners understandably rely heavily on *Davis v. Gibbs*, 39 Wn.2d 481 (1951). The election official published notice of an annexation election in a newspaper, but not a newspaper in the annexed territory as required by statute. The official complied with the statutory requirement to post notice at polling places. The court rejected application of the substantial compliance doctrine because unofficial publication and dissemination of information of an impending election cannot substitute for the required statutory notice, even though such requirement be, in a measure, directory rather than mandatory. The court noted that 2,032 qualified electors failed to vote, and thirty-one voters could have altered the result. *Davis v. Gibbs*, 39 Wn.2d at 486.

If we adopted the reasoning of *Davis v. Gibbs*, we would be compelled to invalidate the Moses Lake School District bond measure. We find, however, *Davis* to conflict with the doctrine of substantial compliance and the overwhelming majority of

15

Washington decisions addressing election irregularities. Numerous decisions in our appendix uphold votes after incomplete notice. *Long v. City of Olympia*, 72 Wn.2d 85, 90, 431 P.2d 729 (1967); *School Dist. 81 v. Taxpayers*, 37 Wn.2d 669 (1950); *Davies v. Krueger*, 36 Wn.2d 649, 219 P.2d 969 (1950); *Vickers v. Schultz*, 195 Wash. 651, 81 P.2d 808 (1938); *Groom v. Port of Bellingham*, 189 Wash. 445, 65 P.2d 1060 (1937); *State ex rel. Dore v. Superior Court for King County*, 171 Wash. 423, 18 P.2d 51 (1933); *Hemmi v. James*, 164 Wash. 170, 2 P.2d 750 (1931); *Loop v. McCracken*, 151 Wash. 19, 274 P. 793 (1929); *Lee v. Bellingham School District No. 301*, 107 Wash. 482, 182 P. 580 (1919); *Rands v. Clarke County*, 79 Wash. 152, 139 P. 1090 (1914); *State v. Doherty*, 16 Wash. 382, 47 P. 958 (1897); *Seymour v. Tacoma*, 6 Wash. 427, 33 P. 1059 (1893). In *Shaw v. Shumway*, 3 Wn.2d 112, 99 P.2d 938 (1940), the election officials published no notice. The Supreme Court's figurative signature in *Davis v. Gibbs* mismatches its emblematic signature in other election irregularity decisions.

In many of the election challenges, the Washington court emphasized that, in addition to the defective notice provided by the election official, campaign literature, advertising, mass meetings, newspaper announcements, or canvassing imparted potential voters with news of the upcoming election along with the merits of the measures. *Davies v. Krueger*, 36 Wn.2d 649, 651-52 (1950); *Shaw v. Shumway*, 3 Wn.2d 112 (1940); *Vickers v. Schultz*, 195 Wash. 651, 81 P.2d 808 (1938); *Lee v. Bellingham School District No. 301*, 107 Wash. 482, 182 P. 580 (1919); *Rands v. Clarke County*, 79 Wash. 152,

16

(1914); *Seymour v. Tacoma*, 6 Wash. 427 (1893). The courts reasoned that the informal methods of notice assured all voters of the time, place, and subject of an election and weighed the informal notice as helping to satisfy substantial compliance with the notice statute. We recognize that the February 14, 2017 vote was not for a general election, and we do not know the extent of publicity or if the ballot contained another election. Nevertheless, all uncalled voters knew of the election since they voted. The uncalled voters also knew of the deficiency in his or her ballot.

In a passage that may intermingle the directory rule with the substantial compliance test, one Washington decision states the rule as: when a statute is directory, as opposed to mandatory, the statute is substantially complied with when an attempt has been made to comply with the statute. *School Dist. No. 81 v. Taxpayers*, 37 Wn.2d at 671. An adopted unifying rule could be that the election will be upheld if the neglected duty is directory and the election officer substantially complied with the purpose of the duty. Because of Michelle Jaderlund's substantial compliance with a directory duty, we affirm the trial court's dismissal of the bond measure challenge.

We now address the third principle of election irregularity law: the court should validate an election unless the challenger shows that the irregularity caused a different result in the election. An election is not to be set aside for a mere informality or irregularity that cannot be said in any manner to have affected the result of the election. *Dumas v. Gagner*, 137 Wn.2d 268, 283 (1999); *State ex rel. Dore v. Superior Court*, 171

17

Wash. 423, 426, 18 P.2d 51 (1933); *State ex rel. Mullen v. Doherty*, 16 Wash. 382, 389 (1897). We liken this principle to the causation element in a tort action. Misconduct, neglect, or negligence by the election official must cause some damage. We assume this principle will not apply if a statute denotes a duty as mandatory.

The Moses Lake School District bond measure passed with a razor thin supermajority. Three votes could have changed the outcome. Nevertheless, we have no evidence that any of the uncalled voters would have corrected the signature if called, and, upon a correction, would have voted against the bond measure. Therefore, we cannot conclude that calling the voters would likely have altered the election result. For this additional reason, we affirm the trial court.

The petitioners stipulated that the trial court should not speculate or attempt to determine how the results of the election would have been different if the Grant County auditor had attempted to notify voters by telephone. The petitioners stipulated not to contact the uncalled voters or discover how any would have voted upon correction of the signature defect.

We may disagree that the parties could not or should not have questioned the uncalled voters. We recognize the importance and constitutional imperative of a secret ballot. WASH. CONST. art. VI, § 6. But that secrecy principle does not preclude a litigant from contacting a voter or a voter from voluntarily disclosing his or her wishes. The petitioners do not argue that the identity of the uncalled voters was privileged. Many

18

decisions entail testimony from voters as to how they would vote in an election. *In re Election Contest Filed by Coday*, 156 Wn.2d 485, 130 P.3d 809 (2006). In *State ex rel. Morgan v. Aalgaard*, 194 Wash. 574, 582, 78 P.2d 596 (1938), our high court noted that, in some cases, one who voted in an election may, if he or she so desires, testify concerning his or her ballot and the person for whom he or she intended to vote.

Petitioners contend that they carry the burden of showing that correction of the notice defect possibly could have impacted the election outcome, rather than would have affected the outcome. We disagree.

Language in *Rands v. Clarke County*, 79 Wash. 152, 159, 139 P. 1090 (1914), supports petitioners' argument. The *Rands* court wrote that the election can be overturned if "the court can see from the record that the result of the election *might* have been different had there been a strict compliance with the statutory requirements." 79 Wash. at 159 (emphasis added). We agree that petitioners show that the election result might have changed if the Grant County auditor phoned all twenty-four uncalled voters since the measure won by only two votes. Nevertheless, we do not consider this isolated quote in *Rands* to control. The quote did not even control the outcome of the *Rands* decision. In a later passage, the *Rands* court observed the need to show the result "would have been different" if the officials complied with the statutory requirements. 79 Wash. at 162.

The *Rands* court cites *Richards v. Klickitat County*, 13 Wash. 509, 43 P. 647 (1896), for its proposition that the challenger need only show the result "might have been different." *Rands v. Clarke County*, 79 Wash. at 159. Nevertheless, the *Rands* court miscites *Richards*. The *Richards* court wrote that the challenger must show that the election "'would have been different.'" 15 Wash. at 513 (quoting *State ex rel. Bailey v. Smith*, 4 Wash. 661, 663, 30 P. 1064 (1892)). The earliest Washington courts to mention this third principle of election invalidity also employed the word "would" rather than "might." *Williams v. Shoudy*, 12 Wash. 362, 366, 41 P. 169 (1895); *State ex rel. Bailey v. Smith*, 4 Wash. at 663. The general rule is that the challenger must show that the outcome of the election would have been different but for the alleged irregularity. 26 AM. JUR. 2D *Elections* § 348.

Petitioners also contend that they would need to prove the likelihood of a different outcome only if they alleged illegal votes under RCW 29A.68.110 or misconduct of the canvassing board under RCW 29A.68.070 or .080. We agree that the three statutes address the two circumstances and impose a burden to show a probability of a different result. Nevertheless, the statutes have no bearing on our appeal and do not support a conclusion that the standard of proof changes under other circumstances.

A fourth and final principle of election law is that an election will not be set aside for want of the statutory notice if wide publicity was given to the matter and an intelligent expression of the popular will resulted from that publicity. *Shaw v. Shumway*, 3 Wn.2d

112 (1940); *Vickers v. Schultz*, 195 Wash. 651, 655 (1938); *Hemmi v. James*, 164 Wash. 170, 175, 2 P.2d 750 (1931). We question our ability to apply this principle since we do not know the amount of publicity circulated in Moses Lake concerning the bond measure. We also do not know the percentage of registered voters who voted in the election. We note, however, that no court has invalidated a vote on the basis of this fourth principle. We refuse to do so also.

Petitioners also assert that the Grant County auditor's oversight to telephone voters disenfranchised the uncalled Moses Lake voters. To bolster this argument, the petitioners observe that the auditor relies on preelection notice requirements, while this appeal concerns a post-election defect. Nevertheless, petitioners forward no decision that distinguishes, for purposes of election law, between preelection errors and post-election errors. Anyway, the uncalled voters had ample opportunity to vote and to correct their error. Ninety-five of the voters who forgot to sign the ballot envelope or whose signature mismatched the registered signature responded to the mailing. We have no facts of any of the uncalled voters encountering obstacles in correcting their incomplete ballot. Washington law confirms that a voter is not deprived of his or her right to vote when a manifestly defective ballot is submitted. *State ex rel. Morgan v. Aalgaard*, 194 Wash. at 578-83 (1938).

The vital and essential question in all election irregularity cases is whether want of statutory notice resulted in depriving sufficient of the electors of the opportunity to

21

exercise their franchise to change the result of the election. *State ex rel. Mullen v. Doherty*, 16 Wash. at 389 (1897). We do not consider the uncalled voters as being deprived of the opportunity to exercise the franchise. They had ample opportunity and notice to vote.

Other principles bolster our holding. The judiciary should exercise restraint in interfering with the elective process. *Dumas v. Gagner*, 137 Wn.2d 268, 283, 971 P.2d 17 (1999); *McCormick v. Okanogan County*, 90 Wn.2d 71, 75, 578 P.2d 1303 (1978). Courts are more liberal in permitting a deviation from the statute when the challenger files suit after the election rather than prior to the election. *Davies v. Krueger*, 36 Wn.2d 649, 653, 219 P.2d 969 (1950). Elections cannot be held invalid nor the returns impeached for mere irregularities. *State ex rel. Doyle v. Superior Court*, 138 Wash. 488, 494, 244 P. 702 (1926). Even gross irregularities not amounting to fraud do not vitiate an election. *Hill v. Howell*, 70 Wash. 603, 612-13, 127 P. 211 (1912). Petitioners do not argue that Grant County Auditor Michelle Jaderlund engaged in fraud.

CONCLUSION

We affirm the trial court's decision dismissing petitioners' election challenge.

_____
Fearing, C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Siddoway, J.

22

APPENDIX

Election Irregularity Challenge Suits

*In re Coday*, 156 Wn.2d 485, 130 P.3d 809 (2006). Four electors initiated contests, in the Washington Supreme Court, to the result of the 2004 Washington gubernatorial election. The court dismissed the contests because of no irregularity. The court dismissed one of the contests on the ground of res judicata because the contention raised paralleled a contention asserted in an earlier dismissed Chelan County suit.

*Foulkes v. Hays*, 85 Wn.2d 629, 537 P.2d 777 (1975). A candidate for county commissioner challenged his opponent's election certification. The Supreme Court affirmed the trial court's order directing a new election. Evidence showed tampering with ballots. Elections officials had failed to securely store the ballots.

*Long v. City of Olympia*, 72 Wn.2d 85, 90, 431 P.2d 729 (1967). Voters challenged an annexation vote. The notice of the election provided an erroneous legal description for the proposed annexed land. Election officials published notice two days past the required date. The court upheld the annexation vote.

*Davis v. Gibbs*, 39 Wn.2d 481, 236 P.2d 545 (1951). A voter successfully challenged an annexation vote for a portion of King County to enter the city of Seattle. A statute required publication of the election in a newspaper printed, published, or distributed in the proposed annexed territory. Officials published notice in a newspaper, but not one printed, published, or distributed in the territory. The court did not consider other extensive publicity of the election to suffice.

*School Dist. 81 v. Taxpayers*, 37 Wn.2d 669, 225 P.2d 1063 (1950). The court held that election notice requirements are not mandatory. The school district published notice of a bond issue election in a newspaper five and twelve days before the election. A statute required publication between thirty and forty days before the election.

*Davies v. Krueger*, 36 Wn.2d 649, 219 P.2d 969 (1950). A voter challenged an election approving a bond issuance for the construction of waterworks on the ground that election authorities first published notice in the legal newspaper fourteen days in advance of the election, when a statute required notice at least thirty days in advance. In part because of the extensive publicity surrounding the election, the court upheld the bond election. The requirement of thirty days' notice was directory in nature.

23

*Shaw v. Shumway*, 3 Wn.2d 112, 99 P.2d 938 (1940). A voter challenged the formation of the Okanogan County Public Utility District and bonds issued by the district. Voters had approved the formation of the district and issuance of the bonds during the November 3, 1936, general election. A statute demanded publication of a notice of the elections in an official newspaper thirty days in advance of the election. The election officials published no notice. The Supreme Court uphold the election because the vote occurred during a general election, because of widespread publicity of the election within Okanogan County, and because of the directory nature of the notice statute. *Shaw* conflicts with *Dunn v. City of Centralia*, except for the fact that the *Shaw* vote occurred during the general election.

*State ex rel. Pemberton v. Superior Court of Whatcom County*, 196 Wash. 468, 83 P.2d 345 (1938). A candidate's wife marked six of the challenged ballots for her husband and she assisted three other voters in marking their ballots. The Supreme Court voided the votes, but not the election.

*Vickers v. Schultz*, 195 Wash. 651, 81 P.2d 808 (1938). The Supreme Court held that the failure to post notice of an election, as required by statute, would not vitiate the election when the purpose of the notice was served by the wide publicity given the election. The subject election, to create the Pacific County Public Utility District, also occurred during the general election of 1936.

*State ex rel. Morgan v. Aalgard*, 194 Wash. 574, 78 P.2d 596 (1938). The Supreme Court would not permit the counting of ballots whereon officials had typed the wrong name of candidates. The court did not invalidate the election, however.

*Groom v. Port of Bellingham*, 189 Wash. 445, 65 P.2d 1060 (1937). The election officials posted and published notice for elections to the port district board of commissioners and the public utility district board of commissioners to be conducted during the general election on November 3, 1936. The notice failed to mention the holding of an election for bonds to pay for the port's harbor improvements. The Supreme Court nonetheless approved of the bond vote because of the large number of voters on the measure.

*State ex rel. Dore v. Superior Court for King County*, 171 Wash. 423, 18 P.2d 51 (1933). The election official incorrectly gave notice of an election of the position of justice of the peace for a two-year term, rather than an unexpired term. The Supreme Court refused to void the election.

No. 35174-2-III
*Meise v. Jaderlund*
Appendix

*Hemmi v. James*, 164 Wash. 170, 2 P.2d 750 (1931). Voters chose a justice of the peace at a township election on January 13, 1931. The official notice advertised the election as occurring on January 13, 1930. Our high court upheld the election.

*Dunn v. City of Centralia*, 153 Wash. 495, 280 P. 26 (1929). Challenger sought to invalidate a city of Centralia bond measure for the construction of a hydroelectric power plant. A state statute required publication of notice of the bond election for ten days leading to the election. The city published notice on only one day. The court refused to apply the doctrine of substantial compliance and invalidated the election. The court wrote: "This official notice was but a slight step short of no official notice." 153 Wash. 495.

*Loop v. McCracken*, 151 Wash. 19, 274 P. 793 (1929). The Port of Anacortes sought to gain voter approval of a bond measure during the 1926 general election. Election officials failed to give legal notice of the election within one precinct of the port district, failed to provide for polling places within the district, and failed to appoint residents within the precinct as election officers. Voters residing within the district needed to vote in another precinct. The court confirmed the measure. The statutes violated did not declare the vote void if election officials violated the statute.

*Malinowski v. Tilley*, 147 Wash. 405, 266 P. 166 (1928). A rival in an election for office of school director challenged the election, in part, on the basis of insufficient notice and early closing of pools. The Supreme Court reversed the superior court and upheld the election.

*State ex rel. Doyle v. Superior Court for King County*, 138 Wash. 488 244 P. 702 (1926). The City of Seattle conducted an election to determine whether the city should adopt a city manager form of government. Challenger complained that election officials employed pencils in the tallies and failed to use words in addition to figures as demanded by statute. Challenger wished to require opening of voting machines. The Supreme Court denied any relief.

*State ex rel. Hanson v. Wilson*, 113 Wash. 49, 192 P. 913 (1920). A candidate's wife entered the ballot booth with six voters and assisted the voters in making their ballots. The Supreme Court voided the votes and invalidiated the election.

25

*Lee v. Bellingham School District No. 301*, 107 Wash. 482, 182 P. 580 (1919). The court held that the school district substantially complied with the statutory notice requirement. A statute required notice to be published three times in two daily papers. The school district only published notice twice before Election Day

*Rands v. Clarke County*, 79 Wash. 152, 139 P. 1090 (1914). Clarke County, then under its original spelling, conducted a special election authorizing the issuance of county bonds to aid in the building of the Vancouver-Portland Columbia River bridge. The statute governing the giving of notice for special elections demanded notice by newspaper publication for a period of at least four weeks next preceding the date of the election. Nevertheless, the county did not publish notice in the newspaper until twenty-six days prior to the election. The court held the county substantially complied with the statute.

*Quigley v. Phelps*, 74 Wash. 73, 132 P. 738 (1913). Losing candidate sought to invalidate election on the basis of the footings on tally sheets being wrong. Court upheld the vote because of no evidence that outcome would have changed.

*Murphy v. City of Spokane*, 64 Wash. 681, 117 P. 476 (1911). Challengers sought to void an election because of the failure of the election officers to observe or comply with the statutory requirements that a certain number of election officers be selected and qualified in a specified manner, that the officers be present at all times, that the officers take an oath of office, or that the polls be opened on time and kept open during the time prescribed by law. The court considered all of the statutory duties to be directive and upheld the vote.

*Wilton v. Pierce County*, 61 Wash. 386, 112 P. 386 (1910). Officials conducted a vote for an annexation into the city of Tacoma. A statute required division of a county into election precincts and designation of one voting place in each precinct. The statute further required each voter to vote within his precinct. Eight precincts lacked voting places. The court voided the election.

*Hesseltine v. Town of Wilbur*, 29 Wash. 407, 410-11, 69 P. 1094 (1902). A statute required notice published in a newspaper ten days in advance of the election. The city published notice thirty days in advance. The court held notice to be sufficient.

*State v. Doherty*, 16 Wash. 382, 47 P. 958 (1897). Voter challenged the validity of city charter amendments. The city clerk followed all notice provisions for the charter amendment election except he failed to post copies of the proposed amendments in the

26

city polling places. The paragraph challenged Supreme Court reversed the trial court's nullification of the election.

*Richards v. Klickitat County*, 13 Wash. 509, 43 P. 647 (1896). The County Commission failed to, contrary to law, mention in its resolution approving an election for indebtedness the newspaper for publication of notice. Regardless, the county published notice in the newspaper of general circulation in the county. The court upheld the election vote.

*Williams v. Shoudy*, 12 Wash. 362, 41 P. 169 (1895). In an election to validate Kittitas County indebtedness, the resolution directing the election required the polls to be kept open from 9 a.m. to 7 p.m. Nevertheless, the notice of the election specified from 9 a.m. to 6 p.m. The polls, were, in fact, kept open until 7 p.m. The court upheld the election.

*Seymour v. Tacoma*, 6 Wash. 427, 33 P. 1059 (1893). A city ordinance required posting of notice of an election in the city official newspaper and the posting of notice in all voting venues for thirty days next preceding said election. The city published notice in the newspaper a full period of thirty days, but that did not include the day immediately preceding the election. The city posted notices in polling places only twenty-six days preceding the day of election. The court held the city to have substantially complied with the ordinance.

*State ex rel. Bailey v. Smith*, 4 Wash. 661, 30 Pac. 1064 (1892). In a contest over a school election, the court held that the provision of the law requiring the polls in such election to be open not later than 1 p. m., and closed not earlier than 8 p. m., was mandatory. Nevertheless, the court held the election valid, although the polls closed at 7 p. m. The challenger failed to show that, had a larger number of votes been cast, the result would have been different.